229 N.J. Super. 399 (1988)
551 A.2d 1006
SUSAN ANTHEUNISSE, PLAINTIFF-APPELLANT,
v.
TIFFANY & COMPANY, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1988.
Decided December 22, 1988.
*400 Before Judges PETRELLA and GRUCCIO.
*401 Gail S. Boertzel argued the cause for appellant (Stephen S. Weinstein, attorney).
Joseph E. Zavesky argued the cause for respondent.
The opinion of the court was delivered by: GRUCCIO, J.A.D.
Plaintiff Susan Antheunisse appeals from a judgment dismissing her complaint for personal injuries allegedly sustained while working for defendant Tiffany & Company, Inc. The trial judge granted defendant's motion for summary judgment, concluding that defendant was a special employer and that the claim was governed by the Workers' Compensation Act. On appeal plaintiff contends that the motion for summary judgment was improperly granted. We agree with the trial judge's determination and affirm.
The record establishes that the Pat Shea Personnel Agency orally contracted to provide defendant with temporary help during the holiday season. Defendant's personnel department screened all the applicants sent by Pat Shea before selecting and assigning them to its various departments. Once the applicants were hired, Pat Shea's role was restricted to processing their paychecks. Defendant, however, retained the power to supervise, discharge or recall a temporary employee until the end of the employment period. When the holiday season ended, the temporary employees would return to the agency for new assignments.
Plaintiff was hired by defendant on October 29, 1984, to work in its packing department until December 21, 1984. On November 28, 1984, while at work, plaintiff sustained serious injuries to her knee. She claims that a foreign object on defendant's floor caused her to slip and fall. Plaintiff subsequently filed a claim against Pat Shea for workers' compensation benefits and a separate tort claim against defendant for personal injury.
*402 We first observe that summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2.
The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one. [Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954)].
The trial court must not decide issues of fact but merely decide whether there are any such issues. Id. at 73. On appeal, we apply the same standard as the trial court in determining whether the grant or denial was correct.
Our jurisdiction allows an employee, for the purpose of workers' compensation to have two employers, both of whom may be liable in compensation. However, recovery against one bars the employee from maintaining a tort action against the other for the same injury. Blessing v. T. Shriver and Co., 94 N.J. Super. 426, 429-430 (App.Div. 1967). "Whether the common law action is precluded is thus dependent upon a determination that the borrower of an employee is, in fact, a special employer." Id. at 430. Professor Larson, in his treatise on Workmen's Compensation formulates a three-pronged test in order to establish employment within the terms of the act regarding "Lent Employees and Dual Employment":
When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
(a) the employee has made a contract of hire, express or implied, with the special employer;
(b) the work being done is essentially that of the special employer; and
(c) the special employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.
Employment may also be "dual," in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the *403 other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable. [1C Larson, Workmen's Compensation (1986), § 48.00, p. 317].
In Blessing, we considered two other co-equal factors, namely, whether the special employer: (1) pays the lent employee's wages, and (2) has the power to hire, discharge or recall the employee. Blessing, 94 N.J. Super. at 430.
Plaintiff first contends that there was no contract between herself and defendant. She contends that in order to find the existence of one, there must be a showing of her deliberate and informed consent. Plaintiff relies on the holding in M.J. Daly Co. v. Varney, 695 S.W.2d 400 (Ky. 1985), in support of her contentions. We find the facts of Daly distinguishable. There, plaintiff was employed by a labor service company and was on assignment to defendant. The plaintiff in Daly, however, explicitly refused to enter into any employment contract with defendant, preferring to stay on the service company's payroll. The court held that plaintiff had elected to retain his common-law rights to sue defendant in tort rather than under workers' compensation. Ibid.
We find the facts of Whitehead, et al. v. Safway Steel Products, Inc., 304 Md. 67, 497 A.2d 803 (1985), more analogous to the matter before us. Whitehead involved a worker, employed by a temporary services agency, who brought a negligence action against the company to which he was provisionally assigned. Id. 497 A.2d at 805. The court granted the company's motion for judgment n.o.v. and held that the worker was an employee of both the temporary agency and the company and that his exclusive remedy was under workers' compensation law. Ibid. The court ruled that the test of whether an express or implied contract of hire existed is satisfied if the employee consents to the special employment relationship. Id. 497 A.2d at 812. The court concluded that plaintiff had voluntarily submitted to the employer's direction and control. Ibid.
Moreover, in Chickachop v. Manpower Inc., 84 N.J. Super. 129 (Law Div. 1964), the court stated that the most "important *404 criterion to be scrutinized is the requirement of a contract between the employee and the special employer." Id. at 137. The court found the work being performed by the lent employee was "essentially that of the special employer and said employer controlled the details of the work." The court held that "the employee knew he would be hired out to special employers and accepted such employers just as he accepted the general employer." Ibid.
Here, plaintiff knew that Pat Shea would hire her out to various employers and accepted the terms of her employment with defendant. She was apprised of the name of her potential employer, the nature of the work and had the opportunity to refuse the job without fearing any reprisal from the agency. Plaintiff impliedly contracted with defendant when she reported voluntarily to work, complied with store policies and accepted the training and guidance provided by defendant. Plaintiff was also aware that she would be terminated from her employment if she failed to submit to defendant's direction and control. Unlike the claimant in Daly, plaintiff acquiesced to contract with defendant.
Plaintiff concedes that her assigned task of packing china and crystal is definitely part of defendant's regular business. Plaintiff also concedes that defendant had the right to control the details of her work and had the power to hire, discharge or recall her. The interrogatories clearly indicate that defendant's personnel department screened all of the applicants sent by Pat Shea before making its final selection; assigned each employee to a specific department, trained and supervised them. The interrogatories also indicate that defendant had the power to discharge any employee whose performance failed to meet company standards. It is of no consequence that plaintiff could remain in the agency's employ even after being discharged by defendant. As we stated in Blessing, 94 N.J. Super. at 426 an employee may have two employers.
Plaintiff also contends that Pat Shea paid her wages and her workers' compensation insurance. We disagree. The interrogatories *405 indicate that the agency would submit to defendant invoices which listed the number of hours plaintiff had worked. Defendant would then submit payment to the agency who in turn processed plaintiff's paycheck. The amount Pat Shea billed defendant ($6.65 per hour) for its use of the temporary employee was greater than what it paid plaintiff ($5 per hour). This extra cost undoubtedly helped cover, besides the agency's profit margin, such expenses as payment of plaintiff's workers' compensation insurance. Thus, defendant actually contributed to the insurance protection of one of its employees. See Chickachop, 84 N.J. Super. at 139; Whitehead, 497 A.2d at 809. The money Pat Shea used to pay plaintiff's compensation benefits came directly from the fee paid by defendant and was one of the expenses included in calculating that fee. See Renfroe v. Higgins Rack Coating & Manufacturing Co., 17 Mich. App. 259, 169 N.W.2d 326, 330 (1969).
We find that defendant was plaintiff's special employer at the time of the accident and that the claim is governed by the Workers' Compensation Act. Consequently, we find no genuine issue as to any material facts and find the grant of summary judgment proper. R. 4:46-2.
Affirmed.