287 N.J. Super. 567 (1996)
671 A.2d 631
JOAN P. KELLY, PLAINTIFF-APPELLANT,
v.
GERIATRIC AND MEDICAL SERVICES, INC. T/A COOPER RIVER CONVALESCENT CENTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1996.
Decided February 29, 1996.
*569 Before Judges SHEBELL, WALLACE and NEWMAN.
Jaffa Stein argued the cause for appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys; Franklin P. Solomon, on the brief).
Francis E. Schachtele argued the cause for respondent (Blejwas, Knapp & Schachtele, attorneys; Mr. Schachtele, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
*570 Plaintiff, Joan P. Kelly, appeals from an order granting summary judgment to defendant, Geriatric and Medical Services, Inc., t/a Cooper River Convalescent Center (CRCC), dismissing her personal-injury negligence complaint. The Law Division judge ruled that as a matter of law, she was a "special employee" of CRCC and, therefore, barred from bringing a tort action against her "special employer" by N.J.S.A. 34:15-8 of the Workers' Compensation Act. We affirm.
Plaintiff, a licensed practical nurse (LPN), was injured on January 16, 1991, when she slipped and fell on a wet floor while working at CRCC's health care facility. At the time, plaintiff was employed by Today's Staffing Services, Inc. (TSI), a labor services company in the business of supplying skilled nursing personnel to health care facilities on a temporary basis. Plaintiff's claim for workers' compensation benefits through the insurance carrier for TSI was paid without contribution from CRCC.
On November 12, 1992, plaintiff filed her complaint against CRCC, alleging that, on January 16, 1991, she was "employed by TSI," and "in the course of her employment with TSI as a nurse," she slipped and fell on a freshly mopped, wet floor "in the course of her ... work at the Cooper River Convalescent Center." Plaintiff alleged that as a "business invitee" at defendant's health care facility, CRCC had a duty to provide her with a "safe place to work," which it negligently breached by exposing her to "unsafe conditions during the course of her employment." Among other defenses asserted, was that at the time of her accident, plaintiff was an "employee of this defendant" and, therefore, her sole and exclusive remedy against it was "under the New Jersey Workers' Compensation Law."
After completion of discovery, CRCC moved for summary judgment. CRCC acknowledged that plaintiff was an "employee ... of TSI," but argued that because plaintiff was an "agency nurse" obtained by defendant from "a temporary personnel agency," CRCC was her "special employer" and plaintiff was, therefore, *571 "barred by the workers' compensation statute's surrender of other remedies provision, N.J.S.A. 34:15-8." Plaintiff responded that "at no time did she consider herself an employee of CRCC," and that at the time of her accident, she was "employed by [TSI], a nursing agency," was an "employee of [TSI] only," and was "not the special or borrowed employee of [CRCC]."
On September 23, 1994, the motion judge held that plaintiff was a "special employee" of CRCC and, therefore, "the workers' compensation bar is applicable." He, therefore, entered an order granting summary judgment in favor of CRCC and dismissed plaintiff's complaint.
The facts are not in great dispute. For several years, plaintiff had been contemporaneously employed by TSI and several other temporary nurse staffing agencies, and had been temporarily assigned to work as an "agency nurse" at various health care facilities, including defendant's. Plaintiff had always worked as an agency nurse because she liked the scheduling flexibility it provided, which was not available to a "staff nurse" regularly employed on the payroll of a health care facility. It was plaintiff's "personal preference to be an agency nurse rather than a staff nurse."
Before plaintiff's fall, defendant would from time to time decide that all nurses working at its various health care facilities "should go staff," that is, "should ... become employees directly of [CRCC]." Defendant had at these times "offered plaintiff a position ... to work on staff." Plaintiff testified: "when that happened, I refused to join staff and I would go work somewhere else," and "then ... the furor would die down and I would go back" to defendant's facility "[t]hrough an agency."
The applicable, though not exclusive, legal criteria to establish a special employer-special employee relationship involves the following fact-sensitive five-pronged test:
(1) the employee has made a contract of hire, express or implied, with the special employer;
(2) the work being done by the employee is essentially that of the special employer;

*572 (3) the special employer has the right to control the details of the work;
(4) the special employer pays the employee's wages; and
(5) the special employer has the power to hire, discharge or recall the employee.
See Antheunisse v. Tiffany & Co., Inc., 229 N.J. Super. 399, 402-03, 551 A.2d 1006 (App.Div. 1988), certif. denied, 115 N.J. 59, 556 A.2d 1206 (1989); see Volb v. G.E. Capital Corp., 139 N.J. 110, 116, 651 A.2d 1002 (1995); see also 1B Larson, Workmen's Compensation Law, § 48.00 at 8-434 (1994).
CRCC urges that although plaintiff and defendant had no "express contract of employment," an implied contract was entered into under which plaintiff "accepted CRCC as her special employer." CRCC reasons that the regular business activity of plaintiff's general employer, TSI, was the placing of nurses in temporary employment with employers such as CRCC. Therefore, it argues, it was impossible for plaintiff to have been doing the work of her general employer, TSI, while at CRCC, and thus, the work she did at CRCC was that of her special employer.
Plaintiff does not dispute that the work she performed at defendant's facility was essentially that of CRCC. She notes, however, that the reverse side of the TSI written form, which plaintiff and CRCC's staff supervisor had to fill out and sign to confirm that plaintiff had worked at defendant's facility on her assigned dates and shifts states:
Today's Staffing will supply staff personnel to Client upon Client request. Personnel working for Client pursuant to this Agreement shall be considered employees of Today's Staffing only. Today's Staffing shall be responsible for payment of wages, withholding of taxes and maintaining required insurance coverages, including general and professional liability insurance.
[Emphasis Added.]
On the issue of control, CRCC's assistant administrator testified at her deposition that "once they [agency nurses] go on the floor they are working for us" and are subject to the same "control" while working on the floor as one of CRCC's own staff nurses vis-a-vis "what [has] to be done." Plaintiff agreed generally with this proposition, but noted that as a skilled LPN, no one had to tell her "what to do" vis-a-vis her duties as an LPN working on the floor.
*573 As to the factor of who paid the employee's wages, the payor on all of plaintiff's paychecks was TSI. Plaintiff never received a paycheck directly from CRCC, nor did she "receive any benefits in terms of fringe benefits" when she worked as an agency nurse at the facility. There is no evidence as to the breakdown of the fee paid to the agency by CRCC, and no showing that the fee is directly tied to plaintiff's wages plus a fixed percentage for overhead. Defendant was never told what the agency nurse received as pay from the agency.
CRCC could discharge an agency nurse only to the extent that it could cause the nurse to be removed from the facility. If an agency nurse "performed badly," the nurse's agency would be told by CRCC to "not send that person to this facility" in the future. Defendant maintained a "do not call list," and any agency nurse who did not perform professionally could be placed on the "list of do not calls," and would not be allowed back regardless of what agency attempted to send the nurse.
Given this factual background, we apply the law. New Jersey "allows an employee, for the purpose of workers' compensation to have two employers, both of whom may be liable in [workers'] compensation." Antheunisse, supra, 229 N.J. Super. at 402, 551 A.2d 1006. In such circumstances, the right to recover workers' compensation benefits serves to bar the employee from maintaining a tort action against either employer. See Ibid.; Murin v. Frapaul Const. Co., 240 N.J. Super. 600, 606-07, 573 A.2d 989 (App.Div. 1990).
A critical criterion in determining whether special employment exists is the requirement of a contract, express or implied, between the employee and the special employer. See Antheunisse, supra, 229 N.J. Super. at 401-05, 551 A.2d 1006; Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 137, 201 A.2d 90 (Law Div. 1964); see also Larson, supra, § 48.23 at 8-524, 8-528, 8-532 ("employers obtaining workers from the kind of labor service typified by Manpower, Inc., have usually, but not invariably, been held to assume the status of special employer").
*574 A contract of employment "may be express or implied." White v. Atlantic City Press, 64 N.J. 128, 133, 313 A.2d 197 (1973). A hiring contract does "not require formality." Gomez v. Federal Stevedoring Co., Inc., 5 N.J. Super. 100, 103, 68 A.2d 482 (App.Div. 1949). While assent to the offer of employment "must be manifested in order to be legally effective, it need not be expressed in words." Ibid. The necessary assent may be expressed in words, or it may be "implied from conduct without words." Ibid. See Deskovick v. Porzio, 78 N.J. Super. 82, 86-87, 187 A.2d 610 (App. Div. 1963) ("contract implied in fact calls for the establishment of a consensual understanding," which may be "inferable from the circumstances under which one furnishes services"). In Antheunisse, supra, 229 N.J. Super. at 404, 551 A.2d 1006, we pointed out that "plaintiff knew that [the personnel agency] would hire her out to various employers and accepted the terms of her employment with defendant." We also noted that plaintiff "had the opportunity to refuse the job without fearing any reprisal from the agency." Ibid. Therefore, we found that plaintiff had "impliedly contracted with defendant when she reported voluntarily to work" and proceeded to "submit to defendant's direction and control." Ibid.
Plaintiff relies on the reasoning in M.J. Daly Co. v. Varney, 695 S.W.2d 400 (Ky. 1985) to support her contention that no implied contract arose. There, the plaintiff was injured on the premises of defendant's chemical distributing plant. 695 S.W.2d at 401. At the time of his accident, plaintiff was employed on the payroll of a labor service company, and defendant had contracted with Personnel Pool for his services. Ibid. The Kentucky Supreme Court noted that plaintiff "had been offered employment by [defendant]" but, "preferring to remain an employee of Personnel Pool on assignment to [defendant]," plaintiff had "expressly refused status as an employee of [defendant] so that he could maintain his status as an employee of Personnel Pool." Id. at 401-02. Because plaintiff had expressly "rejected employment status with the special employer," the court held that plaintiff had "retained the right to sue M.J. Daly & Co." Id. at 401, 403.
*575 We reject the reasoning in Daly, supra, in favor of that supporting our holding in Pacenti v. Hoffman-LaRoche, Inc., 245 N.J. Super. 188, 584 A.2d 843 (App.Div. 1991). In Pacenti, supra, plaintiff was a "direct employee of the Johansen Company" when he slipped and fell while working as a millwright on the premises of Hoffman-LaRoche, Inc. Id. at 189, 584 A.2d 843. The Johansen Company had a "contract with Hoffman-LaRoche to supply maintenance personnel," which "specifically provided that the personnel were not direct employees of Hoffman-LaRoche." Ibid. Plaintiff argued that based on the "express provisions in the contract between Johansen and Hoffman-LaRoche stating that the employee shall remain solely the employee of Johansen," no special-employment could exist. Id. at 192, 584 A.2d 843. We, however, pointed out that the "employment agreement necessary under the Larson tests involves the limited subject of supervision for workers' compensation purposes" and, therefore, "the focus is not upon the relationship between the two corporations, but rather between plaintiff and each of his potential employers." Ibid.
We apply the holdings of Pacenti and Antheunisse and conclude that plaintiff's voluntary acceptance of work at CRCC gave rise to an implied contract of employment. We add that the element of control, as hereinafter discussed, was similarly voluntarily accepted by plaintiff when she complied with assignments and supervision at defendant's facility.
Plaintiff notes that generally, cases dealing with special employees have dealt with non-professionals. Plaintiff urges that, because she was an "independent skilled professional," defendant had "no right to control the details of Joan Kelly's work." According to plaintiff:
She was required to exercise her discretion and use her professional expertise in providing care to patients, dispensing prescribed medication and monitoring patient's conditions. The details of the manner in which she provided nursing care were entirely within her individual control, and CRCC had no right to control those details.
Under the "right to control test," the actual exercise of control is "not as determinative as the right of control itself," *576 because, in many instances, "the expertise of an employee precludes an employer from giving him any effective direction concerning the method he selects in carrying out his duties." Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 350, 382 A.2d 939 (App.Div. 1978); accord Santos v. Standard Havens, Inc., 225 N.J. Super. 16, 22, 541 A.2d 708 (App.Div. 1988); see Marcus v. Eastern Agric. Ass'n, Inc., 58 N.J. Super. 584, 597, 157 A.2d 3 (App.Div. 1959) (Conford, J.A.D., dissenting), rev'd on dissenting opinion, 32 N.J. 460, 161 A.2d 247 (1960) ("while some measure of control is essential to a finding of an employer-employee relationship," the requirement of control is "sufficiently met where its extent is commensurate with that degree of supervision which is necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it"); see also Trauma Nurses, Inc. v. Board of Rev., N.J. Dept. of Labor, 242 N.J. Super. 135, 137, 140, 146-47, 576 A.2d 285 (App.Div. 1990) (a disability-benefits case involving "temporary nursing personnel" supplied to hospital by company in "business of supplying hospitals with nurses on a temporary basis;" we noted that, "once a nurse is placed, the hospital is in complete control of his or her activities," but also recognized "that nurses are professionals and that the details of their work are ordinarily not subject to close supervision"); see generally Nation v. Weiner, 145 Ariz. 414, 701 P.2d 1222 (Ct.App. 1985) (registered nurse, regularly assigned to a hospital by an agency, held to be lent employee; hospital was her special employer and entitled to immunity from negligence action under workers' compensation statute; contention that plaintiff's status as a licensed professional nurse precluded finding of special employee rejected).
It is pivotal to the present case that plaintiff, while rejecting offers of direct employment with CRCC, accepted an employment relationship at the convalescent center where her work duties and job performances were assigned, directed and overseen by CRCC's supervisor. Plaintiff's daily activities were controlled by CRCC and there was an absence of any such control by TSI. Though an LPN, plaintiff's assignments and the evaluation of her *577 performance were clearly under the day to day control of CRCC. Notwithstanding the language of the writing between TSI and CRCC, the right to direct the on-site work assignments and to control that work lay with CRCC. See Thompson v. Grumman Aerospace Corp., 166 A.D.2d 578, 560 N.Y.S.2d 864 (App.Div. 1990). No other manner of control would be acceptable as plaintiff's performance as an LPN was integral and necessary to the conduct of the business of the facility and its patients, and plaintiff as a professional knew she was subject to CRCC's exclusive control while on the job. See Abramson v. Long Beach Mem. Hosp., 103 A.D.2d 866, 478 N.Y.S.2d 105 (App.Div. 1984); accord Riley v. Southwest Marine, Inc., 203 Cal. App.3d 1242, 250 Cal. Rptr. 718 (1988).
We do not find it of any moment that TSI actually paid plaintiff's wages. The money used to pay her wages came indirectly out of the fees paid by defendant for plaintiff's services. See Antheunisse, supra, 229 N.J. Super. at 404-05, 551 A.2d 1006; Chickachop, supra, 84 N.J. Super. at 139, 201 A.2d 90. We have given little weight to this factor in our finding of special employment. It would have had greater importance, as an indicia of "special employment," if the wages were paid directly by CRCC, or if the fee paid to the agency was based on a percentage scale linked to the employee's wages. In any event, this factor is not necessary for a determination that a special employment relationship exists. See Volb, supra, 139 N.J. at 116, 651 A.2d 1002; Antheunisse, supra, 229 N.J. Super. at 403, 551 A.2d 1006.
Regarding the fifth prong of the test, that is, "the power [of the special employer] to fire, discharge or recall the employee," CRCC had no power to decide whether plaintiff could continue working out of TSI for other facilities, however, it had full control over whether she would continue to work at CRCC and indeed whether she would ever again work at any of its other facilities. We find this to be the functional equivalent of the power to discharge her.
The question of whether an employment relationship exists is reserved for the trier of fact where there is a conflict in the *578 evidence or the inferences to be drawn from it. See Brill v. Guardian Life Insurance Co., 142 N.J. 520, 540-42, 666 A.2d 146 (1995). Here, there is no such conflict and the question is one only of law, properly resolved by summary judgment. It is apparent that plaintiff was a special employee of CRCC at the time of her fall and that she is thereby precluded from maintaining the present action against her special employer.
Affirmed.