720 A.2d 350 (1998)
316 N.J. Super. 234
Ronald J. GORE and Bernadette Gore, His Wife, Plaintiffs/Appellants,
v.
William K. HEPWORTH, FMI Trucking Inc., City of Jersey City, C & F Concrete Construction Co., Inc., Defendants/Respondents,
Freedman Truck Center, State of New Jersey, County of Hudson, Conrail, Defendants.
William K. HEPWORTH, FMI Trucking Inc., Freedman Truck Center, Third-party Plaintiffs,
v.
DISTRIBUTION SERVICES LTD., & Hyundai, Inc., Third-party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1998.
Decided October 30, 1998.
*351 Amy R. Winsten, Jersey City, for plaintiff-appellant (Margulies, Wind, Herrington & Knopf, attorneys; Robert E. Margulies, of counsel; Ms. Winsten, on the brief).
John I. Lisowski, Jr., Livingston, for defendant-respondents William K. Hepworth & FMI Trucking, Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Lisowski, Jr., of counsel and on the brief).
Steven R. Maslo, Assistant Corporation Counsel, for defendant-respondent City of Jersey City (Sean M. Connelly, Corporation Counsel; attorney; Mr. Maslo, on the brief).
James P. Lisovicz, Morristown, for defendant-respondent C & F Concrete Construction Company, Inc. (McElroy, Deutsch & Mulvaney, attorneys; Mr. Lisovicz, of counsel and on the brief).
Before Judges WALLACE, NEWMAN and FALL.[1]
The opinion of the court was delivered by *352 WALLACE, J.A.D.
Plaintiff Ronald Gore[2] appeals from orders granting summary judgment in favor of defendants, William K. Hepworth, FMI Trucking, Inc., City of Jersey City, and C & F Concrete Construction Inc. The Law Division judge ruled that Jersey City and C & F Concrete Construction Co., Inc. (C & F Concrete) were immune from liability under N.J.S.A. 59:4-6 of the Tort Claims Act. A different Law Division judge ruled that as a matter of law, plaintiff was a "special employee" of FMI Trucking, Inc. (Trucking) and therefore, plaintiff was barred from bringing a tort action against his "special employer" as per N.J.S.A. 34:15-8 of the Workers' Compensation Act. On appeal, plaintiff contends it was error (1) to find that plaintiff was a special employee; (2) to find there was no genuine issue of material fact in dispute concerning the clearance height of the underpass; and (3) to refuse to reinstate Jersey City and C & F Concrete as defendants based on a new expert's report. We affirm.
Plaintiff was injured on February 4, 1991, when a tractor trailer owned by Freedman Truck Center, and operated by Hepworth, an employee of Trucking, struck an underpass on Linden Avenue East in Jersey City. Prior to impact, plaintiff questioned Hepworth whether the truck would clear the underpass. Hepworth replied that it would clear but the accident followed. At the time, plaintiff was employed by DSL Atlantic (Atlantic). Plaintiff had previously been an employee of Trucking but as of January 11, 1991, he became an employee of Atlantic. Plaintiff recovered Workers' Compensation benefits from Atlantic.
On December 4, 1992, plaintiff filed his complaint against Hepworth, Trucking, Jersey City, C & F Concrete, and others, including John Doe defendants. Hepworth and Trucking claimed in their amended answer as one of their defenses that plaintiff was barred from bringing suit by the Workers' Compensation Act. Jersey City claimed immunity under the Tort Claims Act as one of its defenses. C & F Concrete, which had repaved the roadway beneath the underpass prior to the accident, also asserted a defense under the Tort Claims Act. Discovery ensued. On December 17, 1993, plaintiffs were ordered to provide liability expert reports within sixty days after receipt of C & F Concrete's answers to interrogatories. Plaintiff subsequently moved to extend the date for service of his liability expert report and on April 15, 1994, the motion judge granted plaintiff until June 1, 1994 to submit his expert's report to defendants.
Thereafter, plaintiff filed the expert liability report of Michael Natoli dated May 25, 1994. In his report, Natoli noted the underclearance was thirteen feet, six inches at the east fascia and thirteen feet, six and three-quarter inches at the west fascia. At the time of his report, the underclearance was marked thirteen feet, four inches. It is undisputed, however, that at the time of plaintiff's accident the underpass was marked thirteen feet, six inches. Natoli also noted that the investigating police officer at the scene of the accident measured the underclearance at thirteen feet, five and one-half inches. It was Natoli's opinion that Jersey City was negligent for improperly signing the roadway with an underclearance of thirteen feet, six inches when the actual clearance was thirteen feet, five and one-half inches. Similarly, Natoli concluded that C & F Concrete was negligent for failing to properly construct a pavement surface to meet the underclearance requirement of thirteen feet, six inches.
On October 25, 1995, Jersey City moved for summary judgment based on plan and design immunity under N.J.S.A. 59:4-6 and C & F Concrete later sought the same relief. In support of its motion, Jersey City submitted the certification of Principal Engineer John Mucha who certified that on or about November 15, 1990 the clearance of the underpass was thirteen feet, six inches. The motion judge found that there was no genuine issue of material fact in dispute regarding the underclearance being thirteen feet, six *353 inches and concluded that Jersey City and C & F Concrete were immune from liability under the plan or design immunity provision of the Tort Claims Act. Consequently, the judge granted summary judgment in favor of Jersey City and C & F Concrete. The judge, however, noted that if plaintiff presented reliable evidence before trial that the underclearance was less than thirteen feet, six inches, he would reconsider his ruling.
On April 10, 1996 plaintiff filed a motion to vacate the summary judgment in favor of Jersey City and C & F Concrete on the ground that new evidence confirmed that the height clearance marking of the underpass after paving did not conform with applicable highway safety standards and that a genuine issue of fact existed regarding the actual clearance of the underpass. In support of this motion, plaintiff submitted a report prepared by Henry Dobbelaar, Jr. dated April 8, 1996. Dobbelaar did not dispute that the underclearance was thirteen feet, six inches, but opined that the underclearance sign was inconsistent with the U.S. Department of Transportation's Manual on Uniform Traffic Control Device for Highways and Streets, which required that the sign must show a minimum clearance of three inches less than the actual clearance to allow for weather and other variations in the roadway. The motion judge found that plaintiff's new submissions was merely a second expert's opinion which did not place the underclearance of thirteen feet, six inches in dispute. The judge denied plaintiff's motion on May 21, 1996.
On April 29, 1997, Hepworth and Trucking moved for summary judgment claiming that plaintiff was barred from recovery pursuant to the Workers' Compensation Act. On May 16, 1997, the motion judge concluded that plaintiff was a special employee of Trucking and therefore, the workers' compensation bar was applicable. The judge granted summary judgment in favor of Hepworth and Trucking. This appeal followed.
Plaintiff contends that the judge erred in finding as a matter of law that plaintiff was a special employee of Trucking.
Initially, we note that an employee's exclusive remedy against the employer for ordinary work injuries is a statutory remedy without regard to fault. In return, the employee forgoes a common law tort remedy. N.J.S.A. 34:15-8; Ramos v. Browning Ferris Indus., 103 N.J. 177, 183, 510 A.2d 1152 (1986). A special employee is subject to that same limitation with regard to the special employer. See Volb v. G.E. Capital Corp., 139 N.J. 110, 116-17, 651 A.2d 1002 (1995).
In Volb, supra, our Supreme Court instructed that New Jersey has adopted the three-prong test recommended by Professor Arthur Larson for establishing a special employment relationship:
Whether the common law [tort] action is precluded [by the borrowed-employee doctrine] is ... [dependent upon a determination that the borrower of an employee is, in fact, a special employer. Professor Larson... lays down a three-pronged test in order to establish employment within the terms of the Workers' Compensation] [A]ct:
When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
(a) The employee has made a contract of hire, express or implied, with the special employer;
(b) The work being done is essentially that of the special employer; and
(c) The special employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.
....
There is no uniform agreement as to a predominant factor. The sheer weight of authority is undoubtedly on the side of "control." ... The federal authorities ... are uniform that the "ultimate test is: Whose is the work being done? ... In determining whose work is being done, the question of the power to control the work is of great importance ...."
[Volb, supra, 139 N.J. at 116, 651 A.2d 1002 (quoting Blessing v. T. Shriver & Co., 94 N.J.Super. 426, 430-31, 228 A.2d *354 711 (App.Div.1967) (citations and footnote omitted) (last two omissions in original) (quoting 1A Arthur Larson, Workmen's Compensation § 48.00, at 710 (1966), and Jones v. George F. Getty Oil Co., 92 F.2d 255, 263 (10th Cir.1937), cert. denied, 303 U.S. 644, 58 S.Ct. 644, 82 L.Ed. 1106 (1938))).]
Recently, in Kelly v. Geriatric & Med. Serv., 287 N.J.Super. 567, 572, 671 A.2d 631 (App.Div.), aff'd, 147 N.J. 42, 685 A.2d 943 (1996), we noted two additional factors:
([d]) the special employer pays the employee's wages; and
([e]) the special employer has the power
to hire, discharge or recall the employee.
The most important factor in determining a special employer's status is whether the special employer had the right to control the special employee's work. Volb, supra, 139 N.J. at 116, 651 A.2d 1002.
Applying these factors here, we find no reason to interfere with the motion judge's conclusion that plaintiff was a special employee of Trucking. Ernest DeSaye, president of Trucking and Fashion Marketing Inc. (Marketing), certified that he was also the president of Atlantic and that the management of Marketing performed all of the management functions of Atlantic. Further, he certified that there was an agreement "wherein employees from one company would be hired as special employees of the other during times when work for either was lessened" and that the employee's salary would be "paid by the special employer in one of two methods, either by direct monetary payment or the corresponding of payment of the salary of a corresponding employee." In addition, he noted that Atlantic had no trucks and was not in the trucking business but rather was exclusively a container freight station/warehouse operation.
Gregory DeSaye, vice president of Marketing and a part owner of Trucking, certified that on February 4, 1997, although plaintiff was on the payroll of Atlantic as a warehouseman, he was performing work as a special employee of Trucking. He noted that any high level supervisor of Trucking could discharge plaintiff and that when he reported to Trucking supervisor Rocky, plaintiff was under Rocky's control.
We are satisfied that the only evidence submitted on this issue demonstrated that Atlantic and Trucking had an oral agreement for the exchange of employees. Plaintiff was under the supervision of Rocky, the supervisor of the special employer, and plaintiff was directed to work as a driver's helper. Thus, plaintiff submitted to Trucking's direction and control. It is not disputed that the work being done by plaintiff was for Trucking and that Trucking clearly controlled plaintiff on the job. Thus, the main factor of control favors the finding that plaintiff was a special employee of Trucking.
As to the factor of payment of wages, Ernest DeSaye certified that pursuant to the arrangement among the related companies, the special employee's salary would be paid by the special employer or "the corresponding payment of the salary of a corresponding employee." While it is not entirely clear that the special employer would always pay the salary either directly or through a type of credit arrangement, we noted in Kelly, that "this factor is not necessary for a determination that a special employment relationship exists." Id. at 577, 671 A.2d 631 (citations omitted).
Regarding the final factor of "the power to fire, discharge or recall the employee," as noted above Trucking had full control over the activities of plaintiff while working for Trucking. Further, Trucking could bar plaintiff from performing work for it by instructing Atlantic not to send plaintiff to Trucking again to act as a special employee. We find that the right to control whether plaintiff would be assigned to work for Trucking is the equivalent of the power to discharge him. See Kelly, supra, 287 N.J.Super. at 577, 671 A.2d 631.
Viewing the statement of facts and certification submitted by the parties regarding the employment relationship, we find no material dispute. See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540-42, 666 A.2d 146 (1995). It is clear from our consideration of the applicable factors here that plaintiff was a special employee of Trucking and, therefore, is precluded from maintaining this tort action *355 against Hepworth and Trucking. We affirm the grant of summary judgment in favor of Hepworth and Trucking essentially for the reasons expressed by the motion judge.
Plaintiff next contends there was a genuine issue of material fact in dispute with regard to the actual clearance height of the underpass.
The undisputed facts showed that the Engineering Department of Jersey City approved a thirteen foot, six inch underclearance for the underpass and that Jersey City's engineer and plaintiff's engineering expert measured the underclearance to be at least thirteen feet, six inches. Only Officer Urbanowicz's measurement indicated the underclearance to be thirteen feet, five and one-half inches. This measurement taken by Officer Urbanowicz, however, was approximated. Officer Urbanowicz acknowledged that he had no special training in taking precise measurements and recognized that there was a margin of error in the measurements he took. The motion judge noted that plaintiff's engineering expert measured the underclearance to be thirteen feet, six inches, and that the only measurement disputing this height clearance was not an exact measurement and concluded that there was no material fact in dispute. We agree. Under these circumstances, it is clear that the evidence that the underclearance measurement was thirteen feet six inches was so one-sided that Urbanowicz's measurement did not raise a genuine issue of material fact. See Brill, supra, 142 N.J. at 540, 666 A.2d 146.
Moreover, the underclearance of the roadway beneath the bridge was posted at thirteen feet, six inches. It was undisputed that the work C & F Concrete had performed beneath the underpass prior to the accident was part of the plan and design approved by Jersey City. At the time of the repairs the roadway was closed to the public and was not opened until the thirteen foot, six inch underclearance was confirmed and the signs installed showing the minimum underclearance to be thirteen feet, six inches. C & F Concrete performed the work consistent with Jersey City's plan and design. Consequently, once the work was approved by Jersey City as being in compliance with the plans and design, Jersey City and C & F Concrete for plan and design were properly shielded from liability under N.J.S.A. 59:4-6. See Costa v. Josey, 83 N.J. 49, 63, 415 A.2d 337 (1980); Cobb v. Waddington, 154 N.J.Super. 11, 15-17, 380 A.2d 1145 (App.Div.1977), certif. denied, 76 N.J. 235, 386 A.2d 859 (1978).
Lastly, plaintiff contends that it was error for the motion judge to refuse to reopen his claims against Jersey City and C & F Concrete based upon Henry B. Dobbelaar, Jr.'s expert opinion. On or about April 9, 1990 plaintiff served Dobbelaar's expert report upon Jersey City and C & F Concrete. Dobbelaar opined in his report that the height clearance sign marked thirteen feet, six inches was improper because it did not comply with U.S. Department of Transportation requirements as set forth in The Manual on Uniform Traffic Controlled Devices for Streets and Highways. Furthermore, as required by N.J.S.A. 27:56-4, the signage failed to provide three inches of safety cushion. According to Dobbelaar, this mismarking of the safe clearance height was a substantial factor that contributed to the accident.
Rule 4:42-2 provides that any order which adjudicates less then all of the claims as to all parties "shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." R. 4:42-2; see Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). Consequently, the court had the authority to review the prior decision.
However, plaintiff submitted the Dobbelaar report well after the June 1, 1994 deadline for the submission of expert reports. While the motion judge had earlier indicated to plaintiff that he would reconsider his grant of summary judgment in favor of Jersey City & C & F Concrete if plaintiff presented evidence before trial that the clearance was not thirteen feet, six inches, plaintiff's new report did not dispute the actual height of the clearance. Rather, plaintiff sought to present a new expert's theory that the height clearance sign should have indicated a minimum clearance height three inches less than the actual clearance. Because Dobbelaar's report was well beyond the deadline for the submission of an expert's report and because *356 the report did not contest the actual underclearance, we find no abuse of discretion in the motion judge's denial of plaintiff's motion to open the judgment and reinstate his complaint against Jersey City and C & F Concrete.
Moreover, it is clear that the general liability provision of N.J.S.A. 59:4-2 are limited by the specific immunity sections. See Weiss v. New Jersey Transit, 128 N.J. 376, 380-382, 608 A.2d 254 (1992). Thus, even if Dobbelaar's report had been considered, in our view, Jersey City and C & F Concrete would nevertheless be immune from liability under the plan and design immunity provision of N.J.S.A. 59:4-6. Dobbelaar criticized the plan and design approved by Jersey City for not providing signs that posted a clearance height that was three inches lower than the actual underclearance. The plan and design work performed by C & F Concrete called for an underclearance and sign of thirteen feet, six inches. The work performed was consistent with the plans and the sign was accurate. Consequently, we find no cause to interfere with the motion judge's order denying plaintiff's motion to vacate the summary judgment in favor of Jersey City and C & F Concrete.
Affirmed.
NOTES
[1] Judge Fall did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] Plaintiff in the singular refers to Ronald Gore. Plaintiff's wife, Bernadette Gore, also filed a consortium claim.