**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0591-15T2

KELVIN HOLMES,

    Plaintiff-Appellant,

v.

JOSE ZAYAS, and JERSEY CITY
INCINERATOR AUTHORITY,

    Defendants,

and

WASTE MANAGEMENT OF NEW JERSEY,
INC. d/b/s or a/k/a NE NJ HAULING,
NORRISTOWN ON SITE d/b/a CENTREX
STAFFING, INC.,

    Defendants-Respondents.

_____

        Argued March 16, 2017 — Decided October 13, 2017

        Before Judges Espinosa and Suter.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Docket No. L-
        0597-13.

        Daniel W. Sexton argued the cause for
        appellant.

        Paul Lanza argued the cause for respondents
        (Callahan & Fusco, LLC, attorneys; Mitchell

R. Ayes and Karen L. Williams, on the
brief).

PER CURIAM

Plaintiff Kelvin Holmes was an employee of Norristown On Site d/b/a Centrix Staffing, Inc. (Centrix), a company that provided workers to defendant Waste Management of New Jersey (WM) pursuant to a contract. After he was struck by a car and injured, plaintiff collected workers compensation benefits from Centrix, settled with third parties and filed the instant action against Waste Management. He appeals from an order granting summary judgment to WM, contending that the dismissal of his negligence claim was error. We affirm, substantially for the reasons set forth by Judge Joseph A. Turula in his oral decision.

## I.

In our review of the order granting summary judgment, we view the evidence in the light most favorable to plaintiff to determine whether Waste Management was entitled to judgment as a matter of law, Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)), and review questions of law de novo. Davis v. Devereux Found., 209 N.J. 269, 286 (2012).

In the early morning hours of November 22, 2011, plaintiff had finished his shift as a sanitation worker when he was dropped

A-0591-15T2

off by a Waste Management truck driver on JFK Boulevard in Jersey City, where he was to be met by a Waste Management supervisor who plaintiff expected to drive him to help on another route.[1] He attempted to cross Kennedy Boulevard to meet the supervisor but was struck by a vehicle driven by Jose Zayas.

At that time, plaintiff had returned to working for WM two weeks earlier, having been placed there by a temporary agency, Centrix. His paychecks came from Centrix. He previously worked for WM from 2006 to 2007 and from 2002 through 2004. Each time, he was placed with WM by a temporary agency, Centrix for 2006 to 2007 and Active Staffing for 2002 through 2004. Plaintiff testified that, in 2006, Centrix took over the contract with WM from Active Staffing and that, when he returned to work, Centrix "was the agency you had to go through to get employment."

Plaintiff's sole reason for applying to Centrix was so he could work for WM and he was "only employed with Centrix so that [he] could work for [WM]." This had not been the case with Active Staffing, where he did other jobs as well as working for WM.

---

[1] Plaintiff testified that when he was dropped off, it was either to take him home or to help out with another route. He believed that on this evening, he would have been taken to another route because it was too early to go home.

Plaintiff did not have to fill out additional paperwork for WM. He watched a safety video that was specific to working for WM and never returned to the Centrix office.

On November 7, 2011, plaintiff signed a form, labeled "Focus on Integrity, Code of Conduct, Safety Training, Responsibility Statement, Contractor Copy," which stated:

> I acknowledge that I am not a Waste Management employee but have been made aware of [WM's] Code of Conduct, understand it and accept my obligation and responsibility for maintaining [WM's] reputation for integrity. I acknowledge that I understand the safety training I have received and that it is my responsibility to wear all safety equipment as required and to comply with all applicable safety training, rules and regulations.

He also signed an "Employee Safety Training Documentation" that acknowledged he had seen the "Waste Management Safety Video."

Each day, he began work by walking to a destination where a supervisor drove him in a WM van to the garage where the garbage trucks were located. Throughout his employment, he was told where the van would pick him up and what he would be doing. During the two weeks he was employed prior to the accident, Centrix's "input" regarding his employment was to tell him he was assigned to WM. He was advised on a daily basis by a WM supervisor whether he was scheduled for work the following day.

The safety equipment plaintiff received, gloves and a lime green vest with reflectors, were provided by Centrix but, some of the vests were labeled with WM's name on the back. The trucks he worked on were WM trucks.

In 2011, Randy Newman was operations manager for Centrix. He testified that Centrix trained employees who would work for WM using materials provided by WM. Centrix handled disciplinary issues and was responsible for terminating employees when necessary.

Thomas Brindley, senior district manager at WM, testified that the route manager for WM selected who would work for WM on any given day. Although the route manager did not have authority to terminate the employment of any Centrix employee, he could advise Centrix if he did not want a particular worker to return to work for WM. He stated further that WM had safety requirements for certain items the workers should wear.

The Master Agreement between WM and Centrix (referred to herein as Contractor) provided, in part:

> 3. Contractor Responsibilities: Contractor is in the business of supplying trained and qualified temporary labor ("Personnel") or ("Worker") to perform work as requested by Waste Management. Contractor is solely responsible for performing all hiring, firing, discipline, training and other responsibilities necessary to discharge its legal obligations as the employer of the

Personnel supplied to Waste Management. Contractor and Personnel shall be independent contractors in respect of Waste Management, and shall not be employees of Waste Management. Contractor is solely responsible for all payments whatsoever required to be made to or in respect of its Personnel, including, without limitation, all wages, salaries and benefits (including health insurance and/or medical payments), all federal, state and local payroll taxes, and all Workers' Compensation insurance coverage and payments.

4.   Invoicing, Payment, & Rates: Contractor shall be reimbursed by Waste Management's third party administrator, . . . .

5.   Training: Contractor is obligated to ensure that Personnel supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training that meets or exceeds the training Waste Management provides to its employees for the same or similar jobs.

9.   Insurance: Contractor agrees to maintain the following minimum insurance with solvent and qualified insurers acceptable to Waste Management:

   a.   Workers Compensation and Employers Liability Insurance:

      . . . .

   d.   Waste Management, including parent, affiliated and related companies shall be named as an Additional Insured on all policies except Workers' Compensation.

A-0591-15T2

The Workers' Compensation Act (WCA) <u>N.J.S.A.</u> 34:15-1 to -128, provides an employee with an exclusive remedy against the employer for work-related injuries. <u>Gore v. Hepworth</u>, 316 <u>N.J. Super.</u> 234, 240 (App. Div. 1998), <u>certif. denied</u>, 158 <u>N.J.</u> 70 (1999); <u>N.J.S.A.</u> 34:15-1,-7, -8. An employee receives workers' compensation benefits, which are awarded without regard to fault, and surrenders common law tort remedies against his or her employer and co-employees, except for intentional wrongs.[2] <u>N.J.S.A.</u> 34:15-8; <u>Basil v. Wolf</u>, 193 <u>N.J.</u> 38, 53-54 (2007) (citing <u>Millison v. E.I. du Pont de Nemours & Co.</u>, 101 <u>N.J.</u> 161, 174 (1985)).

An employee may have two employers under the special-employee doctrine. <u>Volb v. G.E. Capital Corp.</u>, 139 <u>N.J.</u> 110, 116 (1995) (citing <u>Blessing v. T. Shriver and Co.</u>, 94 <u>N.J. Super.</u> 426, 429-30 (App. Div. 1967)). When the doctrine applies, both employers are subject to liability under the Workers Compensation Act and the "recovery against one bars the employee from maintaining a tort action against the other for the same injury." <u>Antheunisse v. Tiffany & Co., Inc.</u>, 229 <u>N.J. Super.</u> 399, 402 (App. Div. 1988), <u>certif. denied</u>, 115 <u>N.J.</u> 59 (1989).

---

[2] Plaintiff does not appeal from the dismissal of his intentional wrong claim.

Therefore, whether the tort action against WM is barred is "dependent upon a determination that" WM is a special employer of plaintiff. Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 360 (App. Div. 2014) (quoting Blessing, supra, 94 N.J. Super. at 430). Because there is no question that an employment relationship existed between plaintiff and WM, the question whether plaintiff was a special employee of WM is a question of law, which we review de novo. Kelly v. Geriatric and Med. Servs., Inc., 287 N.J. Super. 567, 578 (App. Div.), aff'd, o.b., 147 N.J. 42 (1996).

Our special-employee doctrine has its roots in the three-prong test recommended by Professor Larson for establishing a special-employment relationship:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) The employee has made a contract of hire, express or implied, with the special employer;
>
> (b) The work being done is essentially that of the special employer; and
>
> (c) The special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

> [Blessing, supra, 94 N.J. Super. at 430
> (quoting 1A Larson, Workmen's Compensation §
> 48.00, at 710 (1966)).]

In granting summary judgment, Judge Turula found each of the Blessing criteria was satisfied.

As to the first factor, whether an implied contract was created, the court found WM's repeated assertions that it was not plaintiff's employer to be "largely irrelevant to the legal issue." Citing Kelly, supra, 287 N.J. Super. at 575, the court said "the focus is not upon the relationship between the two corporations, but rather the plaintiff and each of his potential employers." Ibid. Judge Turula observed, "Here, there was no dispute the plaintiff voluntarily accepted work from Waste Management which was [sic] therefore gave rise to an implied contract of employment." Judge Turula thus found the first factor weighed in favor of the special employer relationship.

Plaintiff argues that there can be no implied contract between him and WM because the contract between WM and Centrix precludes its existence. We acknowledge that the contract establishes responsibilities and rights as between WM and Centrix. But, as Judge Turula observed, the issue here regarded the relationship between WM and plaintiff. Pacenti v. Hoffman-LaRoche, Inc., 245 N.J. Super. 188, 193 (App. Div. 1991) ("The employment agreement necessary under the Larson tests involves the limited subject of

A-0591-15T2

supervision for workers' compensation purposes, not the general responsibility for payment of wages, withholding taxes, unemployment compensation responsibility, job benefits and the like."); see also Kelly, supra, 287 N.J. Super. at 577. Thus, the contractual language does not take precedence over the undisputed facts regarding plaintiff's employment. Moreover, finding an implicit contract between plaintiff and WM does not void the contract between WM and Centrix or create immunity for WM because WM is liable as an employer under the WCA.

Turning to the second factor, the work being performed, Judge Turula said this factor was "clearly satisfied" because "there is no dispute that the work done by the plaintiff was essentially that of Waste Management." This factor has some overlap with the third factor, the right to control the details of the work. The "sheer weight of authority" is that the predominant factor is "control." Volb, supra, 139 N.J. at 116. The Court noted, "federal authorities . . . are uniform that the ultimate test is: Whose is the work being done? . . . In determining whose work is being done, the question of the power to control the work is of great importance . . . ." Ibid. (citations omitted).

Judge Turula described the degree of control exercised by WM:

> Based on the record . . . the evidence [is] that Waste Management controlled the daily operation of plaintiff's activities. For

> instance, Waste Management's route manager will determine if the Centrix employee was selected to work on a given day. Moreover, according to the deposition testimony of Thomas Brindley, Waste Management's district management, if the route manager did not want Centrix's employees to return, he would request from Centrix not to have the employee return to Waste Management. . . .

The judge also noted that plaintiff acknowledged he believed the Waste Management employee, Mark Mallett, was his supervisor.

We agree with Judge Turula that each of these criteria was satisfied here. Pursuant to Volb, supra, 139 N.J. at 116, citing Professor Larson's three-pronged test, that is sufficient to establish the special employer relationship. See also Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 117 (App. Div.), certif. granted, 228 N.J. 421 (2016); Hanisko, supra, 437 N.J. Super. at 360.

Two other factors have been discussed as relevant to this inquiry and were considered by Judge Turula -- who paid plaintiff's wages and who had the power to hire, discharge or control the employee.

We have previously noted the direct payment of the employee's wages "is not necessary for determination that a special employment relationship exists . . . because "[t]he money used to pay [plaintiff's] wages came indirectly out of the fees paid by defendant for plaintiff's services." Walrond v. Cty. of Somerset,

11

382 N.J. Super. 227, 237 (App. Div. 2006) (quoting Kelly, supra, 287 N.J. Super. at 577). Indirect compensation for services, as through a temporary staffing agency, is sufficient for a determination that a special employment relationship exists. Kelly, supra, 287 N.J. Super. at 577. Judge Turula accordingly gave little weight to the fact Centrix paid plaintiff and we agree with that assessment.

The "fifth" factor considered by Judge Turula was the power to hire, discharge or recall plaintiff. See Kelly, supra, 287 N.J. Super. at 577. He found that power was inherent in WM's control over plaintiff's day to day activities. The record also supports a conclusion that WM had such power because it had the authority to decide whether a worker could return to work for WM. Like the special employer in Kelly, WM lacked the power to decide whether plaintiff could work out of Centrix for anyone else, but "it had full control over whether [he] would continue to work at [WM]." Ibid. Therefore, we fully agree that WM had the requisite control over plaintiff's employment to satisfy the special employment relationship.

Plaintiff's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0591-15T2