**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1650-17T2

MARIE THEEZAN,

     Plaintiff-Appellant,

v.

THE ALLENDALE COMMUNITY
FOR SENIOR LIVING,

     Defendant-Respondent.

_____

Argued December 20, 2018 – Decided April 16, 2019

Before Judges Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5690-16.

Michael J. Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael J. Confusione, of counsel and on the brief).

G. Christopher Bally argued the cause for respondent (Law Office of Steven J. Tegrar, attorneys; G. Christopher Bally and George H. Sly, Jr., on the brief).

PER CURIAM

Plaintiff, Marie Theezan, appeals from an October 27, 2017 order granting summary judgment for defendant, The Allendale Community for Senior Living (Allendale), and dismissing her case. We affirm.

Plaintiff worked as a housekeeper at Allendale. Her responsibilities included cleaning residents' rooms, dusting, mopping, and making beds. In 2015, Timothy Giancarlo, Allendale's owner and operator, outsourced management of the housekeeping staff to Healthcare Services Leasing Group (HCSG). HCSG took over the staffing and management, i.e., scheduling, hiring, firing, and compensation, including wages, benefits, and taxes, of housekeeping staff. In exchange, Allendale paid HCSG a monthly service fee.

By agreement, Allendale and HCSG "share[d] the right of direction and control over Assigned Employees," but Allendale "nevertheless retain[ed] sufficient direction and control with respect to the Assigned Employees without which [Allendale] would be unable to conduct its business." HCSG retained "sufficient authority as to maintain a nonexclusive right of direction and control with respect to the Assigned Employees, including a right to hire, discipline, demote, promote, compensate, terminate, layoff or otherwise discharge or reassign any of the Assigned Employees." The agreement further provided, "the Assigned Employees shall be considered employees of [HCSG] and [Allendale]

as provided in this Agreement and upon the termination of this Agreement, the Assigned Employees shall be considered employees of [Allendale]."  Allendale's housekeeping staff, including plaintiff, were informed they were now employees of HCSG but would continue to work at Allendale.

An on-site HCSG supervisor oversaw housekeeping staff.  Allendale management did not evaluate housekeeping's work, but when necessary, could request housekeeping address an issue, such as cleaning or taking out the garbage.  If Allendale management was dissatisfied with housekeeping's work, Giancarlo could request HCSG replace housekeeping staff.

On March 14, 2016, plaintiff fell in an office she was cleaning and suffered a broken arm and an injured shoulder.  Plaintiff filed a workers' compensation claim against HCSG.  On August 2, 2016, plaintiff sued Allendale for personal injuries she sustained.

On October 27, 2017, defendant moved for summary judgment and argued plaintiff's claim was barred by the Workers' Compensation Act, N.J.S.A. 34:15-8, because she was a "special employee" of Allendale when she was injured. The trial judge agreed and granted defendant's summary judgment motion.  This appeal followed.

A-1650-17T2

When we review a grant of summary judgment, we use the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). A court should grant summary judgment, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law'" Ibid. (quoting R. 4:46-2(c)). The evidence must be viewed in "the light most favorable to the non-moving party[.]" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).

The Workers' Compensation Act covers all work-related injury claims brought by an employee against their employer. N.J.S.A. 34:15-8. An employee is broadly defined as one "who perform[s] service for an employer for financial consideration[.]" N.J.S.A. 34:15-36. An employee can have both a general and "special" employer. See, e.g., Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 360 (App. Div. 2014) ("Our jurisdiction allows an employee, for the purpose of workers' compensation to have two employers, both of whom may be liable in compensation." (quoting Antheunisse v. Tiffany & Co., Inc., 229 N.J. Super. 399, 402 (App. Div. 1988))). "[R]ecovery against one bars the

employee from maintaining a tort action against the other for the same injury."

Ibid. (quoting Antheunisse, 229 N.J. Super. at 402).

We apply the following five-part test in assessing whether a special employment relationship exists:

> (1) the employee has made a contract of hire, express or implied, with the special employer;
> (2) the work being done by the employee is essentially that of the special employer;
> (3) the special employer has the right to control the details of the work;
> (4) the special employer pays the employee's wages; and
> (5) the special employer has the power to hire, discharge or recall the employee.
>
> [Kelly v. Geriatric & Med. Servs., Inc., 287 N.J. Super. 567, 571-72 (App. Div. 1996).]

See also Walrond v. Cty. of Somerset, 382 N.J. Super. 227, 235-36 (App. Div. 2006); Blessing v. T. Shriver & Co., 94 N.J. Super. 426, 430 (App. Div. 1967). No single factor is dispositive, but "the most significant factor is the third[.]" Walrond, 382 N.J. Super. at 236.

The central issue on appeal is whether plaintiff was a "special employee" of Allendale. Plaintiff argues the trial court erred because (1) Allendale did not have the right to control the details of the work plaintiff was performing, (2) HCSG, not Allendale, compensated plaintiff, and (3) Allendale did not have the

5

ability to hire, discharge or recall plaintiff. Plaintiff relies on Allendale's delegation of the supervision and management of housekeeping staff to HCSG as proof Allendale had no control over plaintiff's responsibilities or performance. Defendant characterizes the contract as a joint employment agreement where both Allendale and HCSG retained "nonexclusive" authority over the housekeeping staff. Defendant asserts it still had the right to fire plaintiff, and plaintiff was subject to its direction and supervision.

Neither party disputes an employment relationship existed between plaintiff and Allendale. Thus, the question is whether Allendale had sufficient authority over plaintiff to be considered a special employer. This is a question of law. Kelly, 287 N.J. Super. at 578. Our analysis of factors three, four and five lead us to conclude plaintiff is indeed a special employee of Allendale and is barred from suing defendant for her work-related injury.

When we consider factor three, "the actual exercise of control is 'not as determinative as the right of control itself[.]'" Id. at 575-76 (quoting Smith v. E.T.L. Enters., 155 N.J. Super. 343, 350 (App. Div. 1978)). In Kelly, the plaintiff was injured when she slipped and fell while staffed at a convalescent center. Id. at 570. Once the plaintiff began working at the convalescent center, her duties and job performances "were assigned, directed and overseen" by a

6

convalescent center supervisor and she was treated no different than a direct employee of the convalescent center. Id. at 572, 576. The plaintiff was found to be a special employee because the convalescent center's right to control her work "was integral and necessary to the conduct of the business of the facility and its patients[.]" Id. at 577.

In Santos v. Standard Havens, Inc., we viewed the "right to control" as a function of accountability, for example, when an employer can require an employee to correct his or her work if the employer is unsatisfied. 225 N.J. Super. 16, 22-23 (App. Div. 1988). The Santos employee was directly employed and paid by Hess Brothers. Id. at 19. Riverdale was a wholly-owned subsidiary of Hess Brothers and Hess Brothers employees routinely performed work for Riverdale. Ibid. The employee was fatally injured while performing work on Riverdale property under the direction of a Riverdale supervisor. Id. at 20–21. Santos considered the extent to which the employer and employee's business can be considered a "'separate calling or enterprise . . . to what extent [the employee] may be expected to carry its own accident burden,'" and whether the duration of employment resembles a contracting arrangement versus completion of a particular job. Id. at 23 (quoting Buchner v. Bergen Evening Record, 81 N.J. Super. 121, 131 (App. Div. 1963)). The Santos employee was considered a

A-1650-17T2

special employee because he was accountable to Riverdale and performed work integral to Riverdale's operation.

Here, plaintiff and the housekeeping staff were subject to Allendale's control because Allendale management dictated where plaintiff cleaned and could request plaintiff revisit her work if unsatisfied. Plaintiff was staffed at Allendale on an indefinite basis, meaning she was dependent on Allendale for work. Even though HCSG provided direct on-site supervision and retained hiring and firing authority, the contract between Allendale and HCSG indicated this authority was "nonexclusive." Allendale "retain[ed] sufficient direction and control with respect to the Assigned Employees without which [Allendale] would be unable to conduct its business." Whether this authority was exercised in practice is of little consequence because the essential question is whether Allendale had the right to control. It was necessary for Allendale to retain control because providing its residents with a clean facility was essential to its business. Therefore, factor three is satisfied.

Plaintiff argues factor four is not met because HCSG, not Allendale, compensated her. But a special employment relationship may exist when the special employer pays the general employer a fee for the employee's services. E.g., Walrond, 382 N.J. Super. at 237-38 (citing six cases where indirect

8

compensation flowed from a special employer to an employee and distinguishing its case where the employee volunteered for the job); Kelly, 287 N.J. Super. at 577 (money paid by special employer to general employer indirectly compensated the plaintiff); Santos, 225 N.J. Super. at 24 ("[T]he name on the paycheck may have little probative value in determining whether a special employment relationship exists"). Here, the agreement requires Allendale to pay a monthly service fee to HCSG, which is consistent with indirect compensation for plaintiff's services. Thus, factor four supports the finding plaintiff is a special employee.

Plaintiff argues HCSG, not Allendale, had the exclusive power to alter her job status. However, we have said factor five is satisfied if the employee's on-site supervisor could request the employee be transferred to a new location. See, e.g., Kelly, 287 N.J. Super. at 577 (sufficient authority found when convalescent center had no power to fire employee but controlled whether employee worked at its facility); Murin v. Frapaul Const. Co., 240 N.J. Super. 600, 611 (App. Div. 1990) (sufficient authority found when on-site supervisor could request a staffing agency send a new concrete mixer but could not technically fire the employee). As long as the on-site supervisor has the functional equivalent of the power to discharge the employee, factor five is satisfied.

A-1650-17T2

Even though HCSG directly employed the housekeeping staff, Allendale retained "sufficient direction and control with respect to the Assigned Employees without which [Allendale] would be unable to conduct its business." In practice, this meant housekeeping staff could be re-assigned if Allendale was unsatisfied with their work. This is the functional equivalent to termination power; therefore, factor five is met. After considering the record in the light most favorable to her, we discern no reason to conclude plaintiff demonstrated genuine issues of material fact sufficient to overcome the conclusion defendant is entitled to a judgment as a matter of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION