JAMES IRIANNE, PLAINTIFF-APPELLANT, v. DIAMOND T OF HUDSON COUNTY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1967—Decided March 2, 1967.

Before Judges GAULKIN, LEWIS and LABRECQUE.

*Mr. Manfred F. Salomon* argued the cause for appellant (*Messrs. Cole and Cole,* attorneys).

*Mr. Frank Fink* argued the cause for respondent (*Messrs. Stevens and Mathias,* attorneys; *Mr. Joel D. Lowinger,* of counsel).

The opinion of the court was delivered by

LABRECQUE, J. A. D. Plaintiff appeals from the involuntary dismissal of his suit for personal injuries.

Plaintiff, a truck driver, while en route to a destination in Connecticut found the brakes of his employer's truck to be inoperative. He drove into a nearby gas station and, upon reporting the situation by telephone to his employer, was instructed to leave the truck there and "come in and we'll have somebody in the morning fix it."

On the following morning, January 3, 1964, upon his return to the service station plaintiff found a man working on the truck who told him "he was from the Diamond T

people" and wore a shirt on which "Diamond T" was written. The man completed his work in about half an hour and then told plaintiff, "Everything is all right," "Everything is in good shape." Plaintiff thereupon resumed his journey, but after driving about 20 miles, while leaving the Connecticut Turnpike, he found that the brakes were again inoperative. He was on a downgrade and when he drove onto an embankment to avoid striking a car in front of him, the truck overturned. He sued for his resultant injuries.

The truck plaintiff had been driving had been purchased from and serviced by defendant Diamond T of Hudson County, Inc. up to the time of the accident. One Arthur Agresta, defendant's general manager, was called as a witness by plaintiff and testified, in effect, that on January 3, 1964 his employer had been notified that a Diamond T truck owned by plaintiff's employer needed servicing. He identified the bill for $17.56 which was rendered to plaintiff's employer by defendant for the work on the truck on the day in question. The bill referred to "shop card number 17970," was dated January 31, 1964, and read as follows: "Road Service. Man to Bruckner Blvd, Whitestone Bridge. Check brake system. Work done by Manor Truck Repair Bronx N. Y." Agresta was unable to identify the specific individual who had actually repaired the truck, his explanation being "my dealing is not with the man who went on the road service; it would be with his employer."

On the basis of the foregoing testimony the trial judge granted defendant's motion for an involuntary dismissal.

The trial judge determined that the evidence was insufficient to justify submission to the jury of the issue of whether or not defendant had contracted to make the repairs. He ruled that "if the brakes were repaired they were repaired by an independent contractor * * * over whom, * * * Diamond T had no control." We disagree. The motion for dismissal admitted the truth of plaintiff's evidence and every inference of fact favorable to plaintiff which could be legitimately drawn therefrom. *Larocca v. American*

*Chain and Cable Co.,* 13 *N. J.* 1, 5 (1953). From the testimony the jury could well have found that plaintiff's employer had purchased the truck in question from defendant, defendant had customarily serviced the truck, and when the brakes became inoperative on the day in question defendant, through Agresta its manager, was called upon to make the necessary repairs and proceeded to do so, thereafter submitting its bill for services. It could also have found that, in lieu of sending one of defendant's employees to the Bronx where the truck was, Agresta made an arrangement with Manor to send one of its men to effect the repairs on defendant's behalf.

The evidence adduced was sufficient to make out a *prima facie* case as to the existence of defendant's undertaking to make repairs. In order for defendant to be held liable for defects in the work done, it was not necessary for the workman actually entrusted with the task of making the repairs to be one of its regular employees. Defendant would have been equally liable if it had "borrowed" Manor's employee for the purpose of doing the work, *Restatement 2d, Agency,* § 227, *p.* 500 (1958), or contracted directly with Manor to do the work for it. 24 *Am. Jur., Garages, Parking Stations, and Liveries,* § 24, *pp.* 491–492 (1939); *Russell's Express, Inc. v. Bray's Garage, Inc.,* 94 *Conn.* 520, 109 *A.* 722 (*Sup. Ct. Err.* 1920); see Annotation, "Liability of garageman to one ordering repair of motor vehicle, for defective work," 92 *A. L. R. 2d* 1408 (1963). It follows that the motion for involuntary dismissal should have been denied. *Cf. Zierer v. Daniels,* 40 *N. J. Super.* 130, 133 (*App. Div.* 1956).

Reversed and remanded for a new trial.