240 N.J. Super. 600 (1990)
573 A.2d 989
EUGENE ALAN MURIN, PLAINTIFF-RESPONDENT,
v.
FRAPAUL CONSTRUCTION CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1990.
Decided May 3, 1990.
*603 Before Judges DEIGHAN, R.S. COHEN and BROCHIN.
Henry S. Buchanan, attorney for appellant (Edward K. Hamill, on the brief).
Drazin & Warshaw, P.A., attorneys for respondent (Linda Stark Conroy, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
At issue here is the right of a "borrowed" or "lent" employee to recover for personal injuries against the "borrowing" or special employer. Plaintiff Eugene Alan Murin was injured when he fell to the ground from the top of a cement mixer truck. The fall occurred when another worker, employed by defendant Frapaul Construction Co., turned on the water to a hose which plaintiff was holding and, due to excessive pressure, a surge of water caused plaintiff to lose his balance and fall from the top of the truck. Plaintiff, who was employed by *604 Consolidated Steel and Aluminum Fence (Consolidated or general employer), brought an action for damages against defendant, employer of the worker who had turned on the hose.
The jury returned a verdict finding defendant 90% negligent and determined plaintiff's damages to be $70,000. Judge Gehricke entered an order for judgment of $63,000 plus prejudgment interest from November 25, 1984 to October 15, 1987 of $21,945 for a total of $84,945 plus taxed costs of $125.
The following facts were developed at trial. On May 25, 1984, plaintiff was injured when the force of water through a hose he was holding caused him to lose his balance and fall from the top of a cement mixer truck. Plaintiff was working on a job which defendant had contracted with the New Jersey Highway Authority to replace the center median on the Driscoll Bridge over the Raritan River on the Garden State Parkway in Perth Amboy. Defendant rented a Dial-a-Mix concrete mixer truck from Consolidated and plaintiff was assigned as the driver and operator of that truck. Plaintiff had worked for Consolidated for 18 years, with this type of truck. In May 1984, he worked a regular shift on that site for nine days with defendant's employees.
Plaintiff's normal routine was to report in the morning to Consolidated to sign in and pick up the truck. Consolidated then told him to report to the job. Plaintiff drove the empty cement truck from Consolidated. When he arrived at the job site, defendant's foreman determined the time plaintiff was to begin and end his work. Plaintiff loaded the truck under the bridge, and drove to the top of the bridge where he began mixing a special grout.
During the nine-day period, plaintiff worked exclusively on this project. On the day he was injured, Consolidated had another concrete mixer truck and driver at the site, but for the previous nine days, only plaintiff worked at the site. Plaintiff was never directed by defendant's employees as to how to mix *605 materials in the truck, nor how to do any specific job. However, defendant's employees did help plaintiff load the truck.
Plaintiff kept a record of the hours that he worked on the job and completed a time sheet which he gave to his boss at Consolidated. He never gave a time sheet to defendant. During the entire period that he worked on defendant's job, he was paid by Consolidated. An invoice,[1] which was marked as an exhibit, indicated that defendant paid a fee to Consolidated which included the rental of the concrete mixer truck, as well as the driver. The grout, stone and water which was mixed in the truck was provided by defendant. It was necessary to load the concrete mixer from the top of the truck. This required plaintiff to stand on the top of the truck.
For the nine days prior to the day of the accident, an older man had turned on the water to load the truck. On the day of the accident, a younger man, who apparently had not been given instructions, turned on the hose. Plaintiff gave no instructions to the younger man concerning the manner in which to turn on the water.
Plaintiff did not know the name of the younger man, but assumed that he was one of defendant's employees. William Densel, defendant's project manager and general superintendent, testified that at the time of the accident, one of defendant's employees, Jack Fernandes, was working with plaintiff.
*606 On this appeal defendant raises the following issues: The trial judge erred in failing (1) to grant defendant's motion for involuntary dismissal for lack of jurisdiction because plaintiff was a "special employee" of defendant and precluded from maintaining a negligence action against defendant; (2) to grant an involuntary dismissal at the close of plaintiff's case, because plaintiff did not establish that the person who turned on the hose was defendant's employee acting within the scope of employment for defendant, and (3) to charge the jury to disregard plaintiff's summation comment that defense counsel had the right to have plaintiff examined by a doctor of defense counsel's choice. Also, for the first time on appeal, defendant alleges that the judge erred in terminating defense counsel's summation after 20 minutes.

I
Defendant asserts that the trial judge erred in denying its motion for an involuntary dismissal prior to trial because plaintiff was a "special employee" of defendant and therefore precluded from maintaining a common law negligence action against defendant. Plaintiff responds that none of the criteria of "special employee" was established and thus the trial judge correctly denied defendant's motion.
To assess the relationships among a general employer, a special or borrowing employer and the lent-employee, it is necessary to consider the particular transaction involved, i.e., whether the employee is seeking worker's compensation from either one or both joint employers, whether the employee is seeking damages by way of common law negligence against one or the other of the employers and whether a third person seeks to hold both or either employers responsible for negligence of the lent employee. For instance, if the employee is seeking worker's compensation, it may be found that the employee has two or more employers. See Domanoski v. Borough of Fanwood, 237 N.J. Super. 452, 455, 568 A.2d 123 *607 (App.Div. 1989); Blessing v. T. Shriver and Co., 94 N.J. Super. 426, 429-430, 228 A.2d 711 (App.Div. 1967); Anderson v. Well-Built Homes of Central Jersey, Inc., 69 N.J. Super. 246, 249, 174 A.2d 216 (App.Div. 1961); Cser v. Silverman, 50 N.J. Super. 125, 126, 141 A.2d 61 (App.Div. 1958); Scott v. Public Services Interstate Transp. Co., 6 N.J. Super. 226, 228-229, 70 A.2d 882 (App.Div. 1950). However, if a lent-employee is entitled to compensation benefits from both employers, he is barred from maintaining a common law negligence action against either of them. Scott, 6 N.J. Super. at 229, 70 A.2d 882.
Here, the employee filed workers' compensation proceedings against the general employer, Consolidated, in which an award was made. Plaintiff then instituted a negligence action against the special or lent-employer, defendant herein. If it is determined that plaintiff was a lent-employee or special employee of defendant, then the negligent action may not be maintained.
In his treatise on workers' compensation, Professor Larson in Section 8 dealing with "Lent Employees and Dual Employment" addressed the question of when an employee becomes a "special employee:"
When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
[1] the employee has made a contract of hire, express or implied, with the special employer;
[2] the work being done is essentially that of the special employer; and
[3] the special employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.
Employment may also be "dual," in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of the injury will be held exclusively liable. [1C Larson, Workmen's Compensation Law (1986), § 48.00 at 8-405]
As to the first element of consent suggested in Larson, in 1 Restatement, Agency, 2d, § 227 at 500 (1958), it is noted that: "A servant directed or permitted by his master to perform *608 services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." Ibid. Under workers' compensation, there can be no liability absent a contract of hire between the employee and the borrowing employer. A contract of hire is essential. Larson, supra, § 411 at 8-405 to 8-409. Restatement, supra, comment a. at 501. Larson, supra, § 48.13 at 8-414. The question is whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business and subject to the direction of the temporary employer as to details of such act. This is a factual question. Restatement, supra, comment a. at 501. On the other hand, to establish vicarious liability to third persons, the borrowing employer must consent or manifest consent to receive the services as an employer. Restatement, supra, § 221 at 492.
An employee's consent is required because the employee loses certain rights along with those he gains when he enters a new employment relationship. Most important, the worker loses the right to sue the special employer at common law for negligence. When the question has been presented in this form, usually the courts have vigilantly insisted upon a showing of deliberate and informed consent by the employee before an employment relationship will be held to bar a common law suit. Larson, § 48.12 at 8-409 to 410.
As to the second element suggested by Professor Larson, i.e., that the work is essentially that of a special employer, absent evidence to the contrary, there is an inference that the employee remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, it has been surrendered. Larocca v. American Chain & Cable Co., 13 N.J. 1, 6, 97 A.2d 680 (1953); Restatement, supra, § 227, comment b. at 501. The presumption of continued employment by the general employer is taken for granted *609 as the beginning point of any lent-employer problem. Larson, supra, § 48.14 at 8-420. To overcome this presumption a party must clearly demonstrate that a new temporary employer has been substituted for the old employer. This demonstration must include a showing that a contract was made between the special employer and the employee. Id. at 8-421 to 422. Although consent to a new contract with a special employer may be implied from the employee's acceptance of the special employer's control and direction, such acceptance may actually be a continuance of obedience to the general employer's commands. Id., § 48.15 at 8-428 to 434.
A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Restatement, supra, § 227, comment c. at 501-502. Normally, the general employer expects the employee to protect his interest in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. Ibid. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Ibid. The furnishing of heavy equipment seems to play the largest part in the lent-employee cases. Larson, supra, § 48.30 at 8-505.
The fact that the general employer is in the business of renting machines and men is relevant, since in such a case there is more likely to be an intent to retain control over the instrumentality. Restatement, supra, § 227, comment c. at 501. This is based on arguments that the general employer would naturally reserve control necessary to ensure that his equipment is properly used, and that a substantial part of any such operator's duties would consist in the continuing duty of maintenance of the equipment. Larson, supra, § 48.30 at 510.
*610 As to the third element concerning control as suggested in Larson, supra, § 48.00, the right to control the end result is distinguished from the method of arriving at it, and falls short of showing employment. Larson, § 48.30 at 8-500. Thus the borrower of a truck and driver can specify the cargo, destination and route without thereby being deemed to assume control of the work. Ibid. If it can honestly be said that the thing contracted for is essentially the end result of getting the goods delivered, the relationship with the general employer may survive more "control" without becoming an employment relationship. Id. § 48.30 at 8-500 to 501.
In general, the New Jersey cases support the above analysis by textwriters. See Gibilterra v. Rosemawr Homes, 19 N.J. 166, 172, 115 A.2d 553 (1955); Larocca, 13 N.J. at 6, 97 A.2d 680; Martin v. Perth Amboy Gen. Hosp., 104 N.J. Super. 335, 347-348, 250 A.2d 40 (App.Div. 1969); Irianne v. Diamond T., Inc., 94 N.J. Super. 148, 150-151, 227 A.2d 335 (App.Div. 1967); Blessing, 94 N.J. Super. at 436, 228 A.2d 711; Viggiano v. William C. Reppenhagen, Inc., 55 N.J. Super. 114, 118-119, 150 A.2d 40 (App.Div. 1959); Falk v. Unger, 33 N.J. Super. 589, 593-594, 111 A.2d 283 (App.Div. 1955); Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401, 405, 82 A.2d 425 (App.Div. 1951). See also Antheunisse v. Tiffany & Co., Inc., 229 N.J. Super. 399, 402-403, 551 A.2d 1006 (App.Div. 1988), certif. den., 115 N.J. 59, 556 A.2d 1206 (1989), where the court applied the three-prong test, formulated by Professor Larson, see ante at 607, 573 A.2d at 992, and noted two additional factors which were addressed in Blessing, 94 N.J. Super. at 430, 228 A.2d 711: (1) whether the employer pays the lent-employee's wages, and (2) whether the employer has the power to hire, discharge or recall the employee.
The trial judge found that Consolidated retained control over plaintiff because he reported to and signed in each morning at Consolidated and again each evening. Judge Gehricke then compared the terms "rental" and "hiring," and concluded *611 that the invoice clearly stated that defendant rented the mixer and its operator.
The equipment itself was useless because the testimony from the defendant was that they had no one at the job site who could operate this equipment. So, without the operator the equipment might just as well have stayed where it originally was for all the good it would have done to Frapaul. They rented a mixer and an operator and that is not a contract for hire.
The judge also emphasized that only Consolidated could hire or fire plaintiff and that if defendant was not satisfied with plaintiff's work, it could only ask for another machine operator. The judge noted that Consolidated paid plaintiff's wages; hence the trial judge found that there was no employer-employee relationship between plaintiff and defendant and denied defendant's motion for dismissal.
From our review of the record, there are substantial credible facts to support Judge Gehricke's determination that there was no employer-employee relationship between plaintiff and defendant.

II
Defendant maintains that the trial judge erred in denying its motion for an involuntary dismissal at the end of plaintiff's case because plaintiff failed to establish that the person who turned on the hose was defendant's employee, or that the person acted within the scope of his employment for defendant.
Judge Gehricke denied the motion for dismissal stating:
... There was specific testimony in this case by the plaintiff that he doesn't know the younger gentleman, but saw him working with the grout bags; the grout bags, the plaintiff testified to, was a portion of the material used to make the cement or mortar or whatever mix it was. And while he doesn't know his name, he knows that he was doing Fraupaul's work, loading the cement, the grout into the truck.
For that reason I think that the jury has before it sufficient evidence for it to proceed with its deliberations.
If, accepting as true all the evidence which supports the position of the party defending against the motion and according that party the benefit of all inferences which can reasonably *612 and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969).
At trial, William Densel, an employee of defendant, testified that the defendant's foreman probably directed Jack Fernandes to work with plaintiff and that Fernandes was an employee of defendant who was present at the time of the accident. Even though plaintiff was not aware of the younger man's name, under the totality of the circumstances, the evidence in the instant case was sufficient for the jury to proceed with deliberations and to infer agency. Since the person who turned on the water went through the same routine as the previous person, it is obvious that he was an employee of the defendant and not an interloper.
There is no merit to defendant's contention concerning the insufficiency of facts to support an agency relationship by the person in charge of the hose on behalf of defendant.

III
Defendant maintains that the trial judge erred in failing to tell the jury to disregard plaintiff's attorney's summation comment that defense counsel had the right to have plaintiff examined by a doctor of counsel's own choice. We find no merit to this contention.
The guidelines concerning inferences that may be drawn from failure to produce a witness are set forth in State v. Clawans, 38 N.J. 162, 171, 183 A.2d 77 (1962). See State v. Irving, 114 N.J. 427, 441-444, 555 A.2d 575 (1989). However, if counsel intends to comment on the failure to produce witnesses, counsel should, out of the jury's presence, inform the court of such an intent so that the court can consider all the circumstances before deciding whether the request is proper. Clawans, 38 N.J. at 172, 183 A.2d 77; Irving, 114 N.J. at 442, 555 *613 A.2d 575. Any failure to follow this procedure in the present case is harmless. Irving, 114 N.J. at 442, 555 A.2d 575.

IV
Although not raised at trial, defendant contends that the trial judge erred in terminating defense counsel's summation after 20 minutes. Defendant asserts that counsel did not have time to properly address the issue of damages and that the time limit was unreasonable under the circumstances.
An issue raised for the first time on appeal is normally refused if it could have been presented to the trial court when an opportunity for such a presentation was available unless the matter is of substantial public interest or goes to the jurisdiction of the trial court. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Clearly this issue could have been presented to the trial court. Moreover, defense counsel failed to request additional time for his summation. It should also be noted that defendant failed to include in the heading for his Point IV that this issue was not presented below, as mandated by R. 2:6-2(a)(1).
The general rule is that it is within the discretion of the trial judge to limit the time allowed for summation. Annotation, "Propriety of Court's Limitation of Time Allowed Counsel for Summation or Argument in Civil Trial," 3 A.L.R.3d 1341, 1344-1345 (1965); 75 Am.Jur.2d, Trial, § 212 at 295-296.
In Aladdin Oil Burner Corp. v. Morton, 117 N.J.L. 260, 187 A. 350 (Sup.Ct. 1936), a case where the trial judge refused to allow plaintiff the right of summation, the Supreme Court reversed, stating that summation is "an absolute right ... subject to reasonable limitation in the exercise of a sound discretion." Id. at 261, 187 A. 350; see also Sullivan v. State, 46 N.J.L. 446, 447-448 (Sup.Ct. 1884), aff'd, 47 N.J.L. 151 (E. & A. 1885). In Sullivan, the Court of Errors and Appeals, affirming the lower court, stated: "[I]t must necessarily rest in the *614 discretion of the court in which the trial takes place to limit the time to be occupied by counsel in addressing the jury, and unless that discretion is so exercised as practically to deny to the accused his constitutional right to have the assistance of counsel in his defense, it is not error." 47 N.J.L. at 151.
We note that plaintiff's counsel also was limited to 20 minutes for summation.
Affirmed.
NOTES
[1] Concrete Truck Rental  Garden State Parkway

 10 days  truck & driver @ 575. $5,750.00
 40 hrs overtime (driver only) @ 23. $ 920.00
 40 hrs additives (P/R taxes & ins.) @ 3.91 156.00
 _________
 $1,076.40 1,076.40
 15% Overhead & Profit on $1,076.40 161.46
 _________
 Total this invoice $6,987.86