**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3135-23

JOHN DUTCHER and
DEANNA DUTCHER,

     Plaintiffs-Appellants,

v.

GREGORY C. STATHIS, ESQ. and
STATHIS & LEONARDIS, LLC,

     Defendants-Respondents.

_____

        Argued September 16, 2025 – Decided October 23, 2025

        Before Judges Currier and Smith.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0181-20.

        Joshua M. Kleinman argued the cause for appellants (Uniglicht, Bloom, Frackt & Kleinman, LLP and Law Office of Justin Lee Klein, LLC, attorneys; Joshua M. Kleinman, of counsel and on the briefs; Justin Lee Klein, on the briefs).

        Kathleen G. Williams argued the cause for respondents (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,

attorneys; Kathleen G. Williams, of counsel and on the brief).

PER CURIAM

In this legal malpractice matter, the trial court granted defendants summary judgment after concluding plaintiff John Dutcher[1] was a special employee at the time of his injury, which barred him from pursuing a negligence claim in the underlying action and foreclosed him, in turn, from asserting a legal malpractice action.

After careful review, and according plaintiff all favorable inferences as we must, we conclude the trial court erred in its analysis of the criteria applicable to a determination of a special employee as articulated in Blessing v. T. Shriver & Co., 94 N.J. Super. 426 (App. Div. 1967), and Kelly v. Geriatric & Med. Servs., Inc., 287 N.J. Super. 567 (App. Div. 1996). We reverse the orders granting defendants summary judgment and denying plaintiff's cross-motion for partial summary judgment.

---

[1] In the legal malpractice action, plaintiff Deanna Dutcher alleged defendants failed to assert a derivative action for her per quod claims in the negligence case. We refer to John as plaintiff.

# I.

## The underlying negligence litigation

We begin by presenting the facts regarding the underlying incident that gave rise to the negligence action. Plaintiff became employed as a police officer in 2007 with the Woodbridge Township Police Department (WPD). On November 3, 2014, the WPD extra duty coordinator assigned plaintiff to an extra duty assignment directing traffic for roadwork being done by Black Rock Enterprises, LLC in Woodbridge.

Plaintiff explained that officers are permitted to take extra duty assignments beyond their regular shifts. An officer on an extra duty assignment provides services, such as security or traffic control, for outside businesses or contractors. Officers volunteer for extra duty assignments by submitting their available days to a coordinator who handles the assignments.

Plaintiff stated that after signing in at police headquarters on November 3, 2014, he drove a WPD patrol car to the nearby Black Rock construction project. Plaintiff did not sign in with Black Rock or fill out any paperwork upon his arrival. He was wearing his WPD uniform and gun.

Once at the Black Rock site, plaintiff and Detective Douglas Cioni, the other WPD officer assigned to the Black Rock project, met briefly with the

3

Black Rock foreman to learn the basic work plan. Plaintiff said extra duty officers providing traffic control devised the traffic plan themselves "to make sure it was a safe working environment for the people that were going to be using that road." The officers placed the cones provided by Black Rock as needed for public safety.

Plaintiff testified that during the afternoon, while on site, he was struck from behind by a Black Rock employee operating a construction vehicle, specifically a skid-steer. He remained on duty for approximately another hour and then returned to the police station where he turned in the WPD patrol car and signed out.

Cioni corroborated that extra duty assignments were coordinated by a dedicated police department coordinator and that he served as the coordinator in 2019. He stated that companies cannot hire or contact officers directly; all requests go through the extra duty coordinator. Cioni advised that officers must adhere to WPD's rules and regulations while performing extra duty assignments, and they are subject to WPD discipline and procedures.

Cioni confirmed that he and plaintiff were not directed by Black Rock or its employees on how to perform the traffic duties, stating:

> We're in charge of the traffic there in the situation. If [Black Rock is] doing something that we don't like, we

A-3135-23

would have them cease work but not the other way around. Usually they can't ask us to leave. We have to be there.

Otherwise, if they decided that they didn't want us there, then they would probably have to stop their work in our town.

Joseph Nisky, the former deputy WPD police director, testified regarding the WPD procedures and policies for extra duty work. He stated that the scheduling coordinator acts as the liaison between the outside entity requesting extra duty officers and the WPD, and is responsible for administrative control, assignment, and monitoring compliance.

Nisky advised that WPD officers performing extra duty work are still considered "on duty," and are subject to all WPD rules, discipline, and control. He also stated only the WPD police director may discipline or remove officers. If the outside company requests not to have a specific officer assigned to the duty, the police director retains the discretion whether to accede to the request. Nisky explained that officers are required to sign in and out at police headquarters before and after each extra duty shift for tracking and payroll purposes. He also stated that the Township of Woodbridge pays the officers for extra duty work. The Township invoices the outside company and even if the company fails to pay, the officers are still paid by the municipality.

5

The proffered written documents supported the officers' testimony. Chapter 325 of the WPD's Policy & Procedures on Secondary Employment states that "[a]ny officer participating in the extra duty work program is considered an on[-]duty member of the [WPD] and is subject to departmental discipline and control."

Jacqueline Vale, managing member and fifty-one percent owner of Black Rock testified during her deposition that in November of 2014, Black Rock had a public contract with Middlesex County for milling services on county roads, including in Woodbridge. Vale explained that the County determined how many police officers were required for the particular job. Black Rock then contacted the local police department to retain off duty police officers. Vale said Black Rock paid the Township's invoice for plaintiff's and Cioni's services on November 3, 2014.

Plaintiff retained defendants to represent him in a negligence action against Black Rock and its employee, the operator of the skid steer. Plaintiff asserted he suffered severe and disabling injuries from the accident at the Black Rock construction site which led to his eventual retirement from WPD. Black Rock moved for summary judgment, asserting plaintiff was its special employee and, therefore, was barred from pursuing the suit under the Workers'

Compensation Act (Act), N.J.S.A. 34:15-1 to -147. Defendants did not oppose the motion on plaintiff's behalf.

After oral argument, the trial court granted the summary judgment motion, finding the statement of facts was deemed admitted based on defendants' failure to dispute or respond to the motion. A subsequent motion for reconsideration was also denied. On appeal, we affirmed the trial court's order, concluding the court properly denied the motion for reconsideration based on the record before it. Dutcher v. Pedeiro, No. A-1088-16 (App. Div. Nov. 22, 2017) (slip op. at 12-13).

## The legal malpractice action

Plaintiff and Deanna filed a complaint against defendants in 2020, alleging defendants were negligent in their representation of them and breached their fiduciary duty. Specifically, the Dutchers contend that defendants: (1) lacked the requisite knowledge and skill to represent plaintiff in the personal injury claims arising from the November 3, 2014 accident, (2) failed to name Deanna as a plaintiff in the underlying lawsuit against Black Rock and its employee, (3) failed to competently and timely conduct sufficient discovery to obtain evidence needed to oppose summary judgment, (4) failed to properly oppose the motion for summary judgment in accordance with the Rules of Court,

7

(5) failed to file a timely motion or otherwise seek an extension of the discovery end date, and (6) abandoned the client in a separate representation, in violation of the Rules of Professional Conduct.

Defendants moved for summary judgment, asserting plaintiff was a special employee of Black Rock at the time of his injury and, therefore, was barred under the Act from pursuing a personal injury action against Black Rock. Plaintiff opposed the motion and cross-moved for partial summary judgment, seeking a determination that he was not a special employee as a matter of law.

In a written opinion and accompanying May 13, 2024 order, the trial court granted defendants summary judgment and denied plaintiff's cross-motion. After considering the applicable case law, including Blessing, and Kelly, the court concluded Black Rock was a dual employer, and plaintiff was its special employee. The court stated:

> First, the work performed by plaintiff was for the benefit of and for purposes of Black Rock's work. But for Black Rock's project the plaintiff would not have been hired to direct traffic. But for Black Rock's project, traffic would not have to be managed.
>
> Second, by signing up voluntarily for the extra duty work and hence accepting the offer extended by Black Rock, a contract was formed. The fact that the extra duty coordinator is assigned to manage and coordinate extra duty work for the [WPD] does not negate the undisputed fact that it was plaintiff that

accepted the extra duty work offered by Black Rock. He did so voluntarily without a directive to do so and without fear of retaliation if he did not.

Third, it is undisputed that plaintiff was paid, albeit indirectly, by Black Rock. Black Rock knew they were responsible for payment for the services rendered by plaintiff and in fact paid WPD invoices. It is also undisputed that the WPD expected to be reimbursed by Black Rock for the payments made to plaintiff for services rendered to Black Rock. That expectation was made known by the notice at the bottom of their invoices indicating that the officers would not be paid until the invoice was paid. That internally the department may have a policy of paying officers even if the special employer does not pay, does not vitiate the expectation and intent of the special employment relationship that the special employer would pay for the extra duty services by reimbursing the department. In other words, the obligation and consequent liability of Black Rock for that payment is not absolved.

Fourth, although it is true that Black Rock did not control how plaintiff would direct traffic, it is undisputed that Black Rock did control when and where plaintiff would perform those duties. Plaintiff, not unlike any other skilled employee, was hired for his training and skill—traffic control. However, without direction from Black Rock, plaintiff would not know when or where to direct the traffic. Plaintiff emphasizes that plaintiff is always an officer even if off duty and bound by department policy in support of the contention that the WPD controlled plaintiff's work. This contention too is unpersuasive. The fact that plaintiff, as an officer, is always bound by department policies does not, by extension, undermine Black

9

Rock's control over the what, when and where of plaintiff's duties.

Further, [p]laintiff places emphasis on the power to hire and fire. As previously noted, Black Rock determined what assistance was necessary to perform its project, when that assistance was needed and where. To obtain that assistance, Black Rock requested extra duty officers. Plaintiff does not dispute that he volunteered for the work accepting Black Rock's offer of employment. The record is less clear on the power to fire.

Black Rock's managing director, . . . Vale, indicated that they could refuse to have a particular officer come back, hence terminate the officer. The WPD witnesses testified the coordinator had the discretion to accommodate the request or not. Although the question was not asked of witnesses, it is logical to presume that a denial of such a request could result in Black Rock simply withdrawing its request for extra duty officers. There is nothing in the record to indicate that Black Rock was bound to employ extra duty officers. Black Rock had the option, as was conceded in oral argument, to hire a traffic director. They were not mandated to hire extra duty police officers.

The court is satisfied that a review of the specific facts of this case while taking the totality of the circumstances into account le[]d to the conclusion that Black Rock was in fact a dual employer. As the court in Blessing noted, the criteria for the determination of an employee-employer relationship is not exclusive and cases are to be considered by their own particular facts. Blessing, 94 N.J. Super. at 434 (quoting Long v. Sims Motor [Transp.] Lines, 117 N.E.2d. 276, 278 (Ind. Ct. App. 1954)). In a dual employment scenario the most

significant inquiry is recognized to be ["]whose interest [was] the employee . . . furthering at the time of the accident.["] Domanowski v. Borough of Fanwood, 237 N.J. Super. 452, 456 (App. Div. 1989) ([quoting Blessing, 94 N.J. Super. at 433]).

Plaintiff was injured while he was doing what Black Rock paid him to do – direct traffic to allow Black Rock to pave the road and provide for the safety of the public and Black Rock employees around the work site. See id. at 459. Plaintiff was serving both a public and private interest. Nothing presented here warrants a finding contrary to that of the [A]ppellate [D]ivision in Dutcher v. Pederio, No. A-1088-16 (App. Div. Nov. 22, 2017)[,] finding that plaintiff was engaged in dual employment as a special employee of Black Rock. Hence, plaintiff would be barred from recovery against the defendant in the [u]nderlying [a]ction.

[(citations reformatted).]

## II.

On appeal, plaintiff contends the trial court erred in analyzing the Blessing/Kelly factors and in determining he was a special employee of Black Rock.

Our review of the trial court's grant or denial of a motion for summary judgment is de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the

11

non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Plaintiff and Deanna allege defendants committed legal malpractice in the handling of the personal injury claim by failing to adequately oppose Black Rock's summary judgment motion and assert Deanna's per quod claim. Plaintiff contends if defendants exercised proper care in their representation, plaintiff would have successfully recovered damages for his injuries and Deanna's per quod claim.

To establish a cause of action for legal malpractice, a plaintiff must show: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).

Here, defendants challenged the third element: whether plaintiff demonstrated proximate cause between defendants' breach of their duty and plaintiff's resultant damages. Plaintiff argues that defendants' breach of their duty resulted in the dismissal of his personal injury complaint, preventing him

from recovering damages. He alleges if defendants had opposed the summary judgment motion, he would have prevailed on his claims against Black Rock because he was not their special employee. Defendants respond that any negligence on their part was immaterial because plaintiff was a special employee of Black Rock and, therefore, was limited to a workers' compensation claim. In essence, defendants argue that even if they had opposed the summary judgment motion on the personal injury claim, the result would have been the same—the finding of a special employee relationship and the dismissal of the complaint.

As with all elements of a legal malpractice action, "[t]he client bears the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996) (citing Lieberman v. Emps. Ins. of Wausau, 84 N.J. 325, 342 (1980)).

"The most common way to prove the harm inflicted by [legal] malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, PC, 179 N.J. 343, 358 (2004). "The 'suit within a suit' approach aims to clarify what would have taken place

13

but for the attorney's malpractice." Ibid. (citing Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987)).

To determine whether the trial court properly analyzed the special employee issue we turn to the applicable statutory and case law.

The Act "provides an employee with an 'exclusive remedy' against an employer for injuries 'arising out of and in the course of employment.'" Walrond v. County of Somerset, 382 N.J. Super. 227, 234 (App. Div. 2006) (citing Gore v. Hepworth, 316 N.J. Super. 234, 240 (App. Div. 1998)); (quoting N.J.S.A. 34:15-1, -7, -8). In exchange for receiving benefits under the Act, the employee is barred from pursuing tort remedies against the employer and co-employees, except for injuries caused by intentional wrongs. Walrond, 382 N.J. Super. at 234 (citing N.J.S.A. 34:15-8; Ramos v. Browning Ferris Indus., 103 N.J. 177 (1986)).

However, an employee may have more than one employer, in which case each employer may be liable under the Act's provisions entitling an injured employee to compensation. Antheunisse v. Tiffany & Co., 229 N.J. Super. 399, 402 (App. Div. 1988). In turn, "recovery against one [employer] bars the employee from maintaining a tort action against the other for the same injury." Walrond, 382 N.J. Super. at 234 (quoting Atheunisse, 229 N.J. Super. at 402).

14

Courts use a "fact-sensitive five-pronged test" to determine whether a special employer-special employee relationship exists. Kelly, 287 N.J. Super. at 571-72; see also Blessing, 94 N.J. Super. at 426. The test was articulated in Blessing and re-affirmed in Kelly. The five factors include whether:

> (1) the employee has made a contract of hire, express or implied, with the special employer;
>
> (2) the work being done by the employee is essentially that of the special employer;
>
> (3) the special employer has the right to control the details of the work;
>
> (4) the special employer pays the employee's wages; and
>
> (5) the special employer has the power to hire, discharge or recall the employee.
>
> [Kelly, 287 N.J. Super. at 571-72.]

We have stated that a court should consider the totality of the circumstances when applying the test. See Santos v. Std. Havens, Inc., 225 N.J. Super. 16, 22 (App. Div. 1988). "No single factor is 'necessarily dispositive, and not all five must be satisfied in order for a special employment relationship to exist.'" Walrond, 382 N.J. Super. at 236 (quoting Marino v. Indus. Crating Co., 358 F.3d 241, 244 (3d Cir. 2004)).

In <u>Blessing</u>, the plaintiff was employed by a detective agency and assigned to work as a guard at the defendant's foundry. <u>Blessing</u>, 94 N.J. Super. at 427-28. The plaintiff was injured after he slipped on wet sand at the foundry which he alleged was caused by a leaking water cooler. <u>Id.</u> at 428-29. The plaintiff received workers' compensation benefits from the detective agency and then filed a negligence action against the foundry. <u>Ibid.</u> After trial, the jury found in favor of the plaintiff, specifically determining that the plaintiff was not an employee of the defendant. <u>Id.</u> at 428, 439.

On appeal, the defendant argued, among other things, that it was a special employer of the plaintiff, and thus shielded from tort liability by the exclusivity of the Act. <u>Id.</u> at 429. This court found:

> There can be no doubt that the guard work done by [the] plaintiff was undertaken in pursuance of [the detective agency's] contract with [the] defendant. The benefit derived from the operation certainly accrued to [the] defendant, but the actual work being done was the security job that [the detective agency] was hired to do. The control exercised by [the] defendant over [the plaintiff] was only incidental in nature and of no particular legal significance. Also important is the fact that the proofs do not suggest any consensual relationship between [the] plaintiff, a so-called "loaned" employee, and [the] defendant for whose benefit his services as a guard were rendered. While such a consent may be expressed or implied, there is nothing in the record upon which to predicate a finding

A-3135-23

of knowledgeable consent or a fair inference that an employment relationship between those parties existed.

[Id. at 436.]

We concluded that "the trial court should have ruled, as a matter of law, that the common law suit was not barred, and [the plaintiff] was not a special employee of the defendant." Id. at 439.

After applying the factual evidence presented here to these legal principles, we conclude that plaintiff demonstrated he was not a special employee of Black Rock on the day he was injured.

Plaintiff was not an employee of Black Rock in any aspect. At all times, he was employed by WPD as a police officer. He was assigned by WPD to perform an extra duty assignment at the Black Rock site. His duties at Black Rock on the day of the assignment and at the time he was injured were traffic control while Black Rock completed its job of milling the roadway. The nature of Black Rock's work is heavy highway road construction—not police functions.

In addition, Black Rock did not control the work plaintiff was doing at the time of his injury. Both plaintiff and Cioni testified that they were in charge of the traffic. Plaintiff was trained in traffic control and direction and was utilizing his training to control traffic for the public's safety while Black Rock did its work. Black Rock could not hire or fire plaintiff directly. Black Rock paid the

17

Township, not plaintiff, and the WPD paid the extra duty officers even if Black Rock failed to pay its invoice. Thus, under the totality of the circumstances presented here, plaintiff was not a special employee of Black Rock.

In Murin v. Frapaul Const. Co., 240 N.J. Super. 600, 603-04, 610-11 (App. Div. 1990), we similarly found there was no special employment relationship where the plaintiff was hired out by his general employer, a steel company, to operate a concrete mixer for the defendant construction company. The plaintiff was injured by the defendant's employee. Id. at 604. We found that the defendant did not control the performance of the work, but only the hours the plaintiff worked; the plaintiff was paid by his general employer, and only the general employer could hire or fire him. Id. at 604-05.

Defendants' reliance on Kelly and Antheunisse to support their arguments is misplaced. Both of those cases involved a plaintiff who was assigned by a temporary staffing agency to work for the defendant. In Kelly, the plaintiff was a nurse who was assigned by a temporary staffing agency to work for the defendant, a convalescent home. Kelly, 287 N.J. Super. at 570-71. She fell while working for the defendant and instituted a negligence suit. Id. at 570. The defendant moved for summary judgment, contending it was the plaintiff's special employer and therefore, the plaintiff's only recourse was under the Act.

Id. at 570-71. The trial court agreed and granted the defendant summary judgment. Id. at 571. On appeal, we considered the Blessing factors and concluded the plaintiff's "work duties and job performances were assigned, directed and overseen by" the defendant. Id. at 576. The plaintiff was performing the core business of the defendant, nursing services. Id. at 570. We gave "little weight" to the factor that the temporary staffing agency paid the plaintiff's wages. Id. at 577. We found the plaintiff was a special employee of the defendant and was precluded from maintaining a negligence action against it. Id. at 578.

In Antheunisse, the plaintiff was assigned by a temporary agency to work for the defendant as a seasonal worker. Antheunisse, 229 N.J. Super. at 401. The plaintiff fell while at work and instituted a tort action against the defendant. Ibid. The trial court granted the defendant summary judgment, finding it was a special employer and therefore, barred from a personal injury suit. Ibid.

The plaintiff conceded her assigned tasks were part of the defendant's regular business. Id. at 404. She also conceded the defendant "had the right to control the details of her work and had the power to hire, discharge or recall her." Ibid. The plaintiff was paid by the temporary agency, and the defendant reimbursed the agency. Id. at 405. We agreed the defendant was a special

employer and that the plaintiff was only permitted to seek relief under the Act. Ibid.

In both Kelly and Antheunisse, this court found special employment relationships where the worker was fully integrated into the putative employer's operations, followed their training, direction and supervision, and performed their core business. By contrast, here, Black Rock's core business is construction, not police traffic control—a fundamental police function. Plaintiff retained control of how to direct the traffic and all supervision and discipline remained with the WPD.

Contrary to defendants' assertions, we are not bound by our prior decision, and our determination here does not conflict with the decision on appeal from the underlying matter. In that opinion, we stated that the facts before the trial court considering the negligence litigation were "the undisputed facts on the motion record, deemed admitted by virtue of [the party's] non-response." Dutcher, slip op. at 8. Moreover, we stated that plaintiff "could have readily refuted most of the material facts developed by [Black Rock], particularly those directly bearing on who plaintiff reported to while working at the construction site, who supervised him, and who determined the circumstances under which he worked while directing traffic at the construction site." Id. at 5-6. Here, we

have a different record, including plaintiff's and other WPD officers' testimony as well as Vale's deposition, which we have reviewed in considering the dueling summary judgment motions.

Under the Blessing/Kelly five factor test, the evidence supports a finding that plaintiff was not Black Rock's special employee. Therefore, the trial court erred in granting defendants summary judgment. Because we conclude there is no issue of material fact, we reverse the orders granting summary judgment to defendants and denying plaintiff's partial summary judgment. Plaintiff's complaint shall be reinstated.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

21

A-3135-23